# Cox v. The State.

## Indictment for Bigamy.

1.　*Bigamy ; constituents of statutory offense of continuing to cohabit after bigamous marriage.*—While sexual intercourse is a necessary ingredient of the statutory offense of continuing cohabitation under a bigamous marriage (Cr. Code of 1886, § 4016 ; Cr. Code of 1896, § 4406), continual sexual intercourse during the whole time the parties live together is not an indispensable element of the offense ; but the crime is committed when the parties to a bigamous marriage, after sexual intercourse, live together as man and wife. under the same roof, acknowledge each other as husband and wife, and in all respects so conduct themselves in the presence of the community, although for years they were prevented, by reason of incapacity, from indulging in the carnal act.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. J. A. BILBRO.

The facts of the case are sufficiently stated in the opinion.

TALLY & PROCTOR, for appellant, cited *Beggs v. State*, 55 Ala. 108 ; *Ashley v. State*, 109 Ala. 48 ; *Sullivan v. State*, 32 Ark. 187 ; *Taylor v. State*, 36 Ark. 84 ; *State v. Gartrell*, 14 Ind. 280 ; *Burns v. Burns*, 60 Ind. 259 ; *Com.*

*v. Munson*, 127 Mass. 459; *Cannon v. United States*, 116 U. S. 55; *Dunn v. Dunn*, 4 Paige 425.

WILLIAM C. FITTS, Attorney-General, for the State, cited Code of 1896, § 4406; *Sullivan v. State*, 32 Ark. 188; *Com. v. Calif*, 10 Mass. 153; *Yardley's Estate*, 75 Pa. St. 207.

BRICKELL, C. J.—The indictment is founded on the last clause of section 4406 of the Criminal Code of 1896, which in its entirety reads : "If any person having a former husband or wife living, marries another, or continues to cohabit with such second husband or wife in this State, he or she must, on conviction, be imprisoned in the penitentiary for not less than two, nor more than five years." The statute was originally enacted as part of the Penal Code of 1841 (Clay's Dig. 432, §§ 4–5), and with changes of verbiage and structure not affecting its construction, has been incorporated in all subsequent revisions or codifications of the statute. Code of 1852, §§ 3232–33.; R. C. 1867, §§ 3599–3600; Code of 1876, §§4185–86 ; Cr. Code, 1886, §§ 4016–17 ; Cr. Code, 1896, § 4406. In *Beggs v. State*, 55 Ala. 108–110, the first case in which it became necessary to construe the statute, it was said : "When this statute is read in connection with the common law existing at the time of its enactment, it is apparent two offenses are thereby created ; or, rather, the common law offense of bigamy is declared, and the punishment which must follow conviction defined ; and a statutory offense, the continuance of cohabitation under the vicious marriage making bigamy, punishable as the latter offense, is created. The offense of bigamy remains, indictable and punishable at the place of its commission. If the second marriage was in this State, the county of its commission is the only place in which an indictment for the offense will lie. As to this offense, the common law is not changed. Necessity for a change is obviated by the creation of the new offense—the cohabitation under the second marriage.. If the marriage was in another State, and the cohabitation in this State, the wrong done here is the evil example of persons living together as husband and wife, who do not in fact and in law sustain that relation—the open continuance of an adulterous connection."

[Cox v. The State.]

The evidence without conflict, shows that the defendant having a wife living, he and she being residents of the county of Jackson in this State, married Martha Hughes in the State of Tennessee, subsequently living with her as his wife in the county of Jackson, then removing to the State of Tennessee, and there living with her as his wife. About five weeks before the finding of the indictment, they returned to the county of Jackson, lived together as man and wife under the same roof, occupied the same bed, acknowledging each other as husband and wife, and in all respects so conducted themselves in the presence of the community. The defendant introduced evidence tending to show, that six or seven years prior to the trial, said Martha, by reason of a serious surgical operation to which she had been compelled to submit, was incapacitated from sexual intercourse, and since the operation he had not had sexual intercourse with her, and for more than three years had not had such intercourse with her in the county of Jackson. Upon this phase of the evidence, the defendant requested several instructions, basing the right to an acquittal upon the proposition that continuous sexual intercourse is an indispensable element of the statutory offense.

We do not doubt that sexual intercourse is a necessary ingredient of the statutory offense. From its original enactment, through all subsequent revisions or codifications of the statute, the statute has been associated with other statutes creating or declaratory of offenses, of which such intercourse is the essential criminating element. Originally, it was associated with the statute denouncing the offense of a man and woman living together in adultery or fornication, and the statute defining incest and fixing its punishment. (Clay's Dig. 429–30, §§ 2–6). Without now tracing the statute through subsequent revisions or codifications, it will be found in the Criminal Code, 1886 (§§ 412–19), associated with the statutes in relation to incest, living in adultery or fornication, seduction, and miscegenation.

Apart from the association of the statute with other statutes, the terms of the statute, "continues to cohabit with such second husband or wife," imply or involve sexual intercourse. The word *cohabit*, and its derivation *cohabitation*, are words of large signification. *Cohabit*,

[Cox v. The State.]

in its general sense, is defined in the Century Dictionary, "to dwell together; inhabit or reside in company, or in the same place or country." And a specific definition is, "to dwell or live together as husband and wife; often with reference to persons not legally married, and usually but not always implying sexual intercourse." There is a corresponding definition of *cohabitation*. In Rawle's Bouvier's Law Dictionary (Rawle's ed.), *cohabit* is defined "to live together in the same house, claiming to be married; and when used without reference to the relation of the parties as husband and wife, the definition is, "to live together in the same house." Mr. Bishop's definition of cohabitation is: "To cohabit is to dwell together. Matrimonial cohabitation is the living together of a man and woman ostensibly as husband and wife." Bish. Mar. & Divorce, § 777. And from such cohabita-. tion, he adds, "the carnal act is presumed."—2 Bish. Mar. & Divorce, § 628.

It is one proposition to assert that sexual intercourse is a necessary element of the statutory offense, and quite another to assert that it must be continuous—that it must attend the whole period of time during which the parties live together ostensibly as husband and wife. The question was very fully discussed and considered in *Cannon v. United States*, 116 U. S. 555. The third sec-. tion of the act of Congress for the suppression of polygamy, reads: "That if any male person in a Territory or other place over which the United States have exclusive jurisdiction, hereafter cohabits with more than one woman, he shall be deemed guilty of a misdemeanor," etc. Cannon was indicted for a violation of this act, and sought to defend upon the ground that he did not have sexual intercourse with the woman with whom he was dwelling, after the enactment of the act. The court said: "The principal question argued at the bar was the proper construction of section 3 of the act of 1882. That question depends upon the meaning of the word 'cohabit' in the section. The meaning contended for by the defendant is indicated by his offer to show by Clara C. Cannon non-access, and facts to rebut the presumption of sexual intercourse with her, and the actual absence of such intercourse, and by requests for instructions to the jury, which are based on the view that the word 'cohabit' necessarily implies the idea of having sexual

[Cox v. The State.]

intercourse. But we are of opinion that this is not the proper interpretation of the statute; and that the court properly charged the jury that the defendant was to be found guilty if he lived in the same house with the two women, and ate at their respective tables one-third of his time or thereabouts, and held them out to the world, by his language or conduct, or both, as his wives; and that it was not necessary it should be shown that he and the two women, or either of them, occupied the same bed or slept in the same room, or that he had sexual intercourse with either of them.  *   *   *   *   It is the practice of unlawful cohabitation with more than one woman that is aimed at—a cohabitation classed with polygamy and having its outward semblance. It is not, on the one hand, meretricious unmarital intercourse with more than one woman. General legislation as to lewd practices is left to the Territorial government. Nor, on the other hand, does the statute pry into the intimacies of the marriage relation. But it seeks not only to punish bigamy and polygamy when direct proof of the existence of these relations can be made, but to prevent a man from flaunting in the face of the world the ostentation and opportunities of a bigamous household, with all the outward appearances of the continuance of the same relations which existed before the act was passed; and without reference to what may occur in the privacy of these relations. Compact for sexual non-intercouse, easily made and as easily broken, when the prior marriage relations continue to exist, with the occupation of the same house and table and the keeping of the same family unity, is not a lawful substitute for the monogamous family which alone the statute tolerates."

By the bigamous marriage in Tennessee, sexual intercourse was contemplated and followed in this State, and in the county of Jackson, originally. It is true, that prior to the finding of the indictment, the statute of limitations had operated a bar to a prosecution for the original vicious cohabitation. But the parties returned to this State, living under the same roof, acknowledging each other as husband and wife, and presenting to the community every *indicia* of that relation. The "carnal act" may not have been committed; that was prevented by the incapacity of the woman, not by the desire or intent of the parties to abstain from it. If capacity had

[Waters v. The State.]

been restored, it would have been resumed. The incapacity, so far as may be inferred from the evidence, was a fact known only to the parties—it was not known in the community in which they were dwelling together. Cases may possibly occur, in which parties may abandon cohabitation—a living together ostensibly as husband and .wife; as parties may abandon living together in adultery or fornication, and they may continue under the same roof. But in such cases, to relieve from criminality, there must be such external evidence of the abandonment, as will neutralize the appearance to the community of the open and demoralizing example of living in an illicit relation. The law intends to preserve and promote the institution of marriage, to prohibit pretenses, or false assumptions of its existence, and to prevent the public scandal and disgrace following the living in that ostensible relation.

There was no error in the refusal of the instructions · requested by the defendant, and the judgment of the court below must be affirmed.

Affirmed.