32 So.2d 306

**MURPHY et al. v. JACOBS et al.**

8 Div. 348.

Supreme Court of Alabama.

Oct. 30, 1947.

Brown, Scott & Dawson and Proctor & Snodgrass, all of Scottsboro, for appellees.

H. T. Foster, of Scottsboro, and H. G. Bailey, of Boaz, for appellants.

SIMPSON, Justice.

This is a second appeal. A reversal was ordered on the former appeal because of the absence of parties necessary to a correct determination of the litigation. Jacobs v. Murphy, 245 Ala. 260, 16 So.2d 859. After remandment, further evidence was taken and the cause was submitted for final decree on the whole evidence before the Honorable Virgil Bouldin, Supernumerary Judge and formerly an Associate Justice of this court.

The purpose of the bill was to have appellant (plaintiff), adjudged the common-law wife of the intestate, West Murphy, deceased.

The only question for decision now is whether the decree dismissing the bill for want of sufficient evidence to sustain it was erroneous and should be reversed.

After a painstaking study of the record in the light of the governing principles of law, we are clear to the conclusion that the decree of the trial court is abundantly supported by the evidence and should be affirmed. That there were years of cohabitation between appellant and deceased is not controverted and the proof is ample to sustain this contention. But the proof that the two mutually agreed to enter into the matrimonial relationship, permanent

and exclusive of all others, after which there was public recognition of the existence of the common-law marriage, is wholly uncertain and unsatisfactory and our conclusion is that the decree of the trial court was well founded in denying relief. So considered, that holding must 'be affirmed.

The decree appealed from fully and correctly stated the pertinent facts and the law controlling, and we here set out the following excerpts therefrom as expressive of our own views.

## "The Law

"Many decisions, several quite recent, have fully defined a common law marriage, the character of evidence required, the presumptions to be indulged, the conclusions to be drawn from varied factual situations. The following excerpts will suffice for the purposes of this case:

" 'To constitute a marriage good and valid at common law—that is, in the absence of a statute otherwise specifically providing—it is not necessary that it should be solemnized in any particular form or with any particular rite or ceremony. All that is required is that there should be an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, between the parties capable in law of making such a contract, consummated by their cohabitation as man and wife or their mutual assumption openly of marital duties and obligations.' Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166, 168.

" 'But where no such ceremonies are required, and no record is made to attest the marriage, some public recognition of it is necessary as evidence of its existence. The protection of the parties and their children, and considerations of public policy, require this public recognition; and it may be made in any way which can be seen and known by men, such as living together as man and wife, treating each other and speaking of each other in the presence of third parties as being in that relation, and declaring the relation in documents executed by them while living together, such as deeds, wills, and other formal instruments. From such recognition the reputation of being married will obtain among friends, associates and acquaintances, which is of itself evidence of a persuasive character. Without it; the existence of the marriage will always be a matter of uncertainty.' Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485.

" 'Cohabitation and reputation are at best only presumptive proofs, and when one of these foundations is withdrawn, what remains is too weak to build a presumption on. There is good sense in the Scotch law, by which cohabitation alone is considered insufficient, and which required in addition habit and repute, because it is said the parties may eat, live and sleep together as mistress and keeper without any intention of entering into marriage.' Sloss-Sheffield Steel & Iron Co. v. Watford, supra.

"See also, Campbell v. Rice, 245 Ala. 395, 17 So.2d 162; Rogers v. McLeskey, 225 Ala. 148, 142 So. 526; Little v. Burgess, 244 Ala. 447, 13 So.2d 761; Prince v. Edwards, 175 Ala. 532, 57 So. 714; 38 C.J. 1316, et seq.

## "The Facts

\*    \*    \*    \*    \*    \*

"Some forty-five or fifty years before his death in 1941, West Murphy, a single man twenty-five to thirty years of age, approached the mother of Della Rooks, then a child of some thirteen years of age, asking the mother to give Della to him. The mother demurred, and West said if refused he would steal Della. The mother then gave in. Whether West made an express promise to marry Della is not clear even from the testimony of Della. I conclude, however, that it was understood, at least by the mother, that a lawful marriage would follow. Thereupon West and Della began living together so far as sex relations go, which was continued as mutual desire and opportunity offered, with few interruptions, down to West's old age.

"As a result Della gave birth to six children, three of whom survive; the eldest, a son, now some 50 years of age, the youngest, a daughter, now some 30 years of age. West, in the privacy of home, manifested fatherly affection for his off-spring, and from time to time assisted the mother

in providing for their support; they worked together in making the crops. At times, especially during a period of some seven years while West's mother was a helpless invalid, Della spent much time at his home doing the household work. Della testifies to several trips together out of the neighborhood in which they lived, and that on such occasions West introduced her as his wife. In view of the whole evidence I deem it unnecessary to pass upon the verity of her testimony in this regard.

"The overwhelming weight of the evidence discloses that during all these years West and Della did not recognize each other as husband and wife among their neighbors, kindred and associates. They did not claim to be husband and wife. She was known as Della Rooks, the mother of illegitimate children, generally reputed to be West Murphy's 'woman' or 'mistress.' She moved out of the neighborhood for a time on two occasions. The same reputation followed her.

"The children always went by the name of Rooks, went to school as such and were so listed in the school census. With full knowledge of West and Della they grew up with all the stigma of illegitimacy. They were the subjects of conflicting rumors, even jests as to their paternity. They were married under the name of Rooks. The son entered the Army in World War I under the name of Rooks. He does not testify in this case. In 1924 Della sued West in an equity case, alleging she was a single woman. During the years West executed several conveyances of land, in none of which did Della join, and in most instances expressly reciting that he was 'single' or 'unmarried.' It appears that in his old age he expressed regrets that he had never married. Finally, it is clear that West and Della, to outward appearances, lived in separate homes, near each other. She, for many years lived with her mother and he with his mother and a brother.

"Without further review, I must conclude there was no common law marriage between West Murphy and Della Rooks.

"They were both sensible people. In these parts the wife takes the husband's name, the children also. Where as here, children were brought up to maturity as illegitimate children of an unmarried woman, the favorable presumption of legitimacy cannot obtain.

"Their sex relations were clandestine and under cover as related to their general deportment among the people where they lived. The greater blame due to disparity of age leading to much sympathy for Della is not the issue here. There must be maintained a clear line of distinction between an adulterous relation and the sacred marriage relation.

"Decree

"Upon full consideration of pleadings and lawful evidence in this cause, it is ordered, adjudged and decreed that complainants be denied relief and the bill be and is hereby dismissed," etc.

As stated, we are in accord with the conclusions above deduced and the decree is affirmed.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.