37 So.2d 186

## TURNER v. TURNER.

### 7 Div. 938.

Supreme Court of Alabama.
Oct. 14, 1948.

Embry & Embry, of Pell City, and Earl McBee, of Birmingham, for appellant.

Robinson & Parris, of Gadsden, for appellee.

SIMPSON, Justice.

This is a contest for letters of administration on the estate of Jones Turner, deceased, between his mother, the appellant, and his divorced wife, Myrtle Lucile Turner, appellee. The real question, however, and determinative of this litigation, is whether or not the appellee, having been divorced from her husband, had thereafter become his common-law wife, all happening shortly before his death.

The couple had a ceremonial marriage in July, 1946, and lived together for about seven months and in February, 1947, separated. Divorce proceedings were instituted by appellee and a decree of divorcement in her favor on grounds of cruelty was rendered March 25th. About the middle of March, a few weeks after the separation, she resumed cohabitation with her husband on condition that he would not mistreat her any more and continued thereafter this cohabitation, with more or less regularity, until he was accidently killed about August 20th following.

The trial court, after a hearing in open court, found in favor of appellee and adjudged her to have been testator's common-law wife, thereby entitling her to administer on his estate. But we find ourselves unable to agree.

While there is a favorable presumption attending the trial court's findings on disputed evidence heard orally before him, there is no such presumption attending his construction of the facts (Lassiter & Co. v. Nixon, 218 Ala. 484, 487(5), 119 So. 17), nor where his conclusion rests on facts indisputably established. Hender-

son v. Henderson, 228 Ala. 438, 153 So. 646. If the trial court took an erroneous view of the law as applied to the facts the rule of presumption does not obtain. Murphree v. Hanson, 197 Ala. 246, 72 So. 437. We are impressed that such is the condition here and that the learned trial judge misapplied the governing principles of law to the recorded evidence.

The law controlling is well understood and need be adverted to only briefly. There must be a mutual understanding to *presently* enter into the marriage relationship, *permanent* and exclusive of all others, *after which* there is public recognition of the circumstances of the common-law marriage. Murphy v. Jacobs, 249 Ala. 594, 32 So.2d 306; Campbell v. Rice, 245 Ala. 395, 17 So.2d 162; Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485.

We stress that to constitute such marriage there must first have been a *present agreement* between a man and a woman, eligible to enter such relationship, to take each other as man and wife; and then this must be followed by cohabitation or the mutual assumption openly of marital duties and obligations. Keezer, Marriage and Divorce, 3rd Ed., Morland, p. 34, § 20; In re Price's Estate, 129 Fla. 467, 176 So. 492; authorities, supra.

As the above-cited Florida case pertinently observes:

"Neither cohabitation and repute nor circumstances, whose sole function is to show mutual consent of the parties, establishes a common-law marriage of itself. *There must be words of present assent per verba de praesenti.*" 176 So. 493. (Emphasis supplied)

We have above italicized to indicate those essential elements which are not supplied in the facts before us to establish a marriage at common law. The appellee herself and most of the other witnesses who possessed any knowledge of the specific fact show that, though the couple had reunited several weeks after their separation and apparently ignored the fact of their divorcement, this reunion was not understood by either of them as, in any sense, a remarriage but was conditioned on the future good conduct of the former husband toward appellee and until he had proven he could "straighten up and show her that he could be a good husband," after which it was their intention to "get another license and remarry." Both parties made such statements to various of the witnesses and appellee so testified at the hearing. We quote from her testimony:

"Cross-Examination. * * *

"Q. You had that agreement with Jones Turner, that after three months if he quit drinking you would remarry him? You say you were going to get another license and remarry again, is that right? A. Yes, sir. * * *

"Redirect Examination. Q. Now, Mrs. Turner, you agreed—you and Jones did discuss the question of going through another ceremony? A. Yes, sir.

"Q. You had no definite time as to when that was going to be done? A. No, sir. ·

"Q. It was based on him quitting drinking and then you would go through another ceremony? A. Yes, sir.

"Q. No date set about it? A. No, sir."

The couple was first united in wedlock by a ceremonial marriage and the entire record reflects that a like reunion was contemplated if the conditions were met. We can find no support in the record before us for the view that in speaking of remarriage the couple had any other intention but remarriage in the conventional way, after procuring a license, by the usual ceremonial procedure. As a matter of fact, there were several witnesses, most called on behalf of the appellee, who had discussed the matter with one or the other and each had said that the remarriage date would be the first of September or after. Jones died August 20th.

In the face of such a record, it is manifest the mere continuation or resumption of cohabitation does not bring the case within the rule. Alabama does not recognize trial marriages. Marriage, common-law or ceremonial, is not transitory, ephemeral, or conditional, but contemplates a present permanent status. An expression of intention to marry in the future, followed by cohabitation, does not create the common-law marital status.

As early as Robertson v. State, 42 Ala. 509, this principle was duly noted:

" * * * The agreement to marry here had reference to the future. It was an agreement to marry at a future time upon the occurrence of an antecedent event—the procurement of a license. The cohabitation was necessarily before the occurrence upon which the agreement to marry was to be consummated. The cohabitation was, therefore, not in fulfillment of a matrimonial agreement, but in advance of an anticipated marriage * * * Here the very terms of the agreement exclude the idea, that the parties consented to marry until a license was obtained, and to infer the consent would be in contravention of an established fact. This we do not think would be right upon principle and policy to do." 42 Ala. at page 511.

The presumptions are all against the idea of a common-law marriage in the instant case. A status once inhering is presumed to continue until the contrary is shown and the rendition of the divorce decree established each party as single, a status presumed to have continued until refuted by satisfactory evidence. With this presumption obtaining, then, the resumed sex relations between these unmarried parties are also presumed to have continued under like conditions until the contrary is established by satisfactory proof. Prince v. Edwards, 175 Ala. 532, 57 So. 714; 35 Am.Jur. 334, § 230; 38 C. J. 1328, §§ 103, 104; 55 C.J.S., Marriage, § 43.

Cohabitation and repute alone do not make a marriage, but merely if not explained afford an inference of marriage from such facts. They are at best but presumptive proof. Murphy v. Jacobs, supra, 32 So. at page 308; Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 428, 17 So.2d 166.

One further observation might not be amiss. The case must be determined on its own particular facts, having regard to the circumstances of the parties. Considerations of public policy, the protection of the family status in a frontier country, inspired the adoption of the rule of common-law marriage. But the courts have been careful to deprecate and stamp with disapproval a status not clearly shown to have been a bona fide one within the established rule. The court cannot close its eyes to the situation of the parties here. The pioneer conditions which fostered the rule no longer obtain in most, if not all, of Alabama. Certainly as respects this couple, white people of some apparent education and quality, living in a populous industrial area of the state, could not have been supposed, from the adumbrant and tenuous manner of their reunion, to have undertaken again the serious consequences of marriage, from which bonds they had so recently been extricated, and which had been originally cemented by a formal ceremony. We think the overwhelming proof negates a common-law marriage, as it is recognized in this jurisdiction.

It results from these conclusions that the decree must be reversed and one here rendered vacating and annulling the letters of administration heretofore issued to appellee and remanding the cause to the circuit court in equity with directions that proper letters of administration be issued in the cause there pending. Code 1940, Title 13, § 138; Constitution of 1901, § 149.

Reversed, rendered, and remanded with directions.

BROWN, LIVINGSTON, and STAKELY, JJ., concur.