246 So.2d 420

James S. P. BECK, Jr., et al. as Individuals and as Co-Executors etc.

v.

Alton Smith BECK.

6 Div. 573.

Supreme Court of Alabama.

Feb. 25, 1971.

Rehearing Denied April 8, 1971.

Hubbard & Waldrop, Tuscaloosa, for appellee.

George W. Nichols, Jr., Tuscaloosa, for appellants.

LAWSON, Justice.

This is an appeal from a final decree of the Circuit Court of Tuscaloosa County, in Equity, rendered in a declaratory judgment proceeding, which decree declared, among other declarations, that appellee, to whom we will sometimes hereinafter refer as Mrs. Alton Smith Beck, was the common-law wife of Dr. James S. P. Beck, deceased, from August 9, 1966, until September 9, 1966, the day of Dr. Beck's death.

The only question for our determination is the correctness of the declaration that Mrs. Alton Smith Beck was the common-law wife of Dr. Beck at the time of his death on September 9, 1966.

The bill for declaratory judgment was filed by the two children of Dr. Beck, as individuals and as co-executors of Dr. Beck's estate, against Mrs. Alton Smith Beck.

The complainants below are the appellants here. In brief filed in this court on behalf of appellee, Mrs. Alton Smith Beck, it is conceded that the division of appellants' brief headed "Statement of Case" is substantially correct, so we will quote pertinent parts of that division of appellants' brief:

"* * * The Bill of Complaint alleged that Dr. Beck had married the Respondent on April 1, 1965, and was granted a divorce from her on November 4, 1965. That on November 8, 1965, he executed his Last Will and Testament, leaving his entire estate, share and share alike, to his two children, appellants herein. Shortly thereafter, Dr. Beck underwent surgery, which revealed that he had cancer, and he never completely returned to health.

"The bill of complaint alleges further that a joint petition was filed by Dr. Beck and the respondent on the 4th day of August, 1966, asking that the divorce be set aside, and on August 9, 1966, Judge W. C. Warren signed a decree, setting aside the divorce, approximately nine months after it had been rendered. It was further alleged that Dr. Beck was mentally incompetent at the time he signed the petition praying that the divorce be set aside.

"That the appellee was living in Dr. Beck's home, claiming to be his widow, and claiming certain items of personal property, including a Cadillac automobile, as her own property.

"Respondent demurred to the bill of complaint. Bill of complaint was then amended by complainants, averring in substance, that the respondent had caused Dr. Beck to change his bank account from an individual account, in his name alone, to a joint account with the respondent. That this took place two days before Dr. Beck died, and now the respondent was claiming the money in the account, which was over $8,000.00, as her property. The bill of complaint as amended, prayed that the Court would declare the decree, setting aside the divorce, to be a nullity, and that the respondent was not the lawful widow of Dr. Beck, and decree that she had no title in the Cadillac automobile, and the money in the joint bank account. Demurrer of respondent to the bill, as amended, was overruled by the Court.

"Respondent filed an answer and cross bill stating primarily that she was the widow of Dr. Beck because the divorce, made and entered on November 4, 1965, was

void, and the decree entered nine months later, on August 9, 1966, purporting to set aside the divorce, reinstated her marriage to Dr. Beck. In the alternative, she averred that a common-law marriage existed between her and Dr. Beck at the time of his death, and that she was his legal widow. [The answer filed by the respondent contained averments denying the alleged mental incompetency of Dr. Beck at the time of the occurrence of the matters alleged in the amended complaint.] Respondent prayed that the Court decree her to be the lawful widow of Dr. Beck; the lawful owner of the Cadillac automobile; and the money in the joint bank account.

"Respondent also filed a dissent from the will of Dr. Beck, claiming a widow's dower in his estate. Complainants filed a general denial to respondent's cross bill."

Following a hearing, at which the witnesses testified orally, the trial court rendered a final decree, which reads as follows:

"This cause coming on to be heard, came the parties in their own and proper persons and by their attorneys and the Court proceeds to hear the evidence ore tenus in open court and the cause having been sumitted for final decree upon the pleadings and evidence presented in open court makes the following findings of fact, conclusions of law and decree.

"The Court finds that the Circuit Court of Tuscaloosa County, Alabama, was without jurisdiction to entertain or hear the joint petition filed by the Respondent and the said James S. P. Beck, Sr., to set aside the decree of divorce dissolving the bonds of matrimony between them, which said decree was made and entered on the 4th day of November, 1965, and concludes that by reason of the lapse of time the Circuit Court of Tuscaloosa County, Alabama, had lost jurisdiction over said cause and was without power to make or enter the order dated the 9th day of August, 1966, purporting to set aside the said final decree of divorce entered on November 4, 1965, between Respondent and the said James S. P. Beck, Sr.

"The Court further finds that the decree of divorce made and entered on the 4th day of November, 1965, was not void and that the allegations of the Complainant in said cause were sufficient to invoke the jurisdiction and authorize the granting of the said final decree of divorce made and entered on the 4th day of November, 1965.

"The Court further finds that based on the evidence presented in this cause that James S. P. Beck, Sr., had the mental capacity to enter into a common law marriage and that a common law marriage between James S. P. Beck, Sr., and the Respondent Alton S. Smith Beck came into existence to [sic], to-wit, August 9th, 1966, on or about the time the order was made and entered purporting to set aside the final decree of divorce of James S. P. Beck, Sr., and *Alston* S. Smith Beck; that said common law marriage existed from said time until the death of James S. P. Beck, Sr., on September 9th, 1966, and that the Respondent Alton S. Smith Beck was the widow of James S. P. Beck, Sr., at the time of his death.

"The Court further finds that based on the evidence presented in this cause the said James S. P. Beck, Sr., did not have sexual intercourse with the Respondent and that no intercourse took place between the Respondent and James S. P. Beck, Sr., between the 9th day of August, 1966, and the 9th day of September, 1966, and that the status of common law marriage existed between James S. P. Beck, Sr., and the Respondent during said time without sexual intercourse having taken place.

"The Court finds as a fact that at the time the said James S. P. Beck, Sr., purported to enter into a contract creating a joint checking account in the First National Bank of Tuskaloosa with Respondent in the amount of approximately Eight Thousand Four Hundred and No/100 ($8,400.00) Dollars, that the said James

S. P. Beck, Sr., lacked the mental capacity to comprehend the nature and consequences of his said action and that he lacked the mental capacity to make such contract, and the Court finds that said contract was void and of no effect and finds that the funds so transferred to said joint account are properly assets of the estates [sic] of the said James S. P. Beck, Sr., deceased.

"The Court further finds that during his lifetime the said James S. P. Beck, Sr., acquired a certain Cadillac automobile which Respondent claims as an inter vivos gift from the said James S. P. Beck, Sr. The Court finds that the evidence of the Respondent with reference to the circumstances of such alleged gift is not sufficient to establish a gift of said automobile to the Respondent and that the same is a part of the property owned by the estate of James S. P. Beck, Sr., deceased.

"IT IS THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the final decree of divorce made and entered on the 4th day of November, 1965, in the cause of James S. P. Beck vs. Alton S. Smith, Case No. 16421 in the Circuit Court of Tuscaloosa County, Alabama, in Equity, was final and binding on the parties, and the decree subsequently entered by this Court on the 9th day of August, 1966, purporting to set aside said final decree of divorce was a nullity. The Register of this Court is ordered to file a copy of this decree in the Court file of the said case of James S. P. Beck vs. Alton S. Smith, being Case No. 16421 in this Court.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that a common law marriage relationship existed between the Respondent and James S. P. Beck, Sr., and the Respondent is found by the Court to be the lawful widow of James S. P. Beck, Sr., by virtue of said common law marriage relationship.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DE-CREED by the Court that the funds transferred to the joint account of Respondent and the said James S. P. Beck, Sr., in the First National Bank of Tuskaloosa on or about the 7th day of September, 1966, be, and the same are hereby declared to be the property of the estate of the said James S. P. Beck, Sr., deceased.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the Cadillac automobile in the possession of the Respondent at the time of the death of the said James S. P. Beck, Sr., be and the same is hereby declared to be the property of the estate of James S. P. Beck, Sr., deceased.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the costs of court in this proceeding be and the same are hereby taxed one-half against the Complainants and one-half against the Respondent with the further instruction that the costs shall be paid by the Executors of the estate of the said James S. P. Beck, Sr., deceased, and and one-half deducted from the distributive share of the Respondent and one-half deducted from the distributive shares of the Complainants, James S. P. Beck, Jr., and Martha Beck Wright."

The complainants below filed an application for rehearing, which was overruled. Thereafter they perfected an appeal to this court.

There was no cross appeal and appellee has made no cross assignments of error; hence, we are not here concerned with the trial court's action in declaring (1) that the divorce decree under date of November 4, 1965, was final and binding on the parties and that the decree of August 9, 1966, purporting to set aside said divorce decree is a nullity; (2) that the funds transferred to the joint account of appellee and Dr. Beck on or about September 7, 1966, are the property of the estate of Dr. Beck; (3) that the Cadillac automobile which was in the possession of appellee at the time of Dr. Beck's death is "the property

of the estate" of Dr. Beck.—Supreme Court Rule 3; American Casualty Co. of Reading, Pa., v. Devine, 275 Ala. 628, 157 So.2d 661.

As stated in an opening paragraph of this opinion, we are concerned on this appeal only with the declaration "that a common law marriage relationship existed between the Respondent [the appellee, Mrs. Alton Smith Beck] and James S. P. Beck, Sr., and the Respondent is found by the Court to be the lawful widow of James S. P. Beck, Sr., by virtue of said common law marriage relationship."

After reading many of our cases which deal with common-law marriages, we find general agreement as to some aspects of such marriages.

■ Our cases are replete with statements to the effect that the common-law mode of marriage is recognized as valid in this state.—Tartt v. Negus, 127 Ala. 301, 28 So. 713; Fuquay v. State, 217 Ala. 4, 114 So. 898; Kelly v. Kelly, 247 Ala. 316, 24 So.2d 265; Herd v. Herd, 194 Ala. 613, 69 So. 885.

■ No ceremony and no particular words are necessary to constitute a valid common-law marriage.—White v. White, 225 Ala. 155, 142 So. 524; Herd v. Herd, *supra*; Huffmaster v. Huffmaster, 279 Ala. 594, 188 So.2d 552; Murphy v. Jacobs, 249 Ala. 594, 32 So.2d 306; Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485.

■ But to constitute such a marriage there must first have been a present agreement, a mutual understanding to presently enter into the marriage relationship, permanent and exclusive of all others.—Turner v. Turner, 251 Ala. 295, 37 So.2d 186; Whitworth v. Whitworth, 256 Ala. 296, 54 So.2d 575; Jenkins v. Avery, 257 Ala. 387, 59 So.2d 671; Goodman v. McMillan, 258 Ala. 125, 61 So.2d 55.

■ The man and the woman must be capable in law of making a marriage contract.—Murphy v. Jacobs, *supra*; White v.

Hill, 176 Ala. 480, 58 So. 444. *See* Turner v. Turner, *supra*.

■■ A marriage contract is of no validity if either of the contracting parties is of unsound mind.—Willis v. Willis, 238 Ala. 153, 189 So. 873. It is unsoundness, not mere weakness of mind, which will avoid a marriage contract unless the weakness be so considerable as to amount to derangement.—Rawdon v. Rawdon, 28 Ala. 565. The *Willis* and *Rawdon* cases were concerned with ceremonial marriages, but the principles for which they are cited here are equally applicable where the question is presented as to whether a claimed common-law marriage is valid.

■ The mutual consent by a man and woman capable in law of making a marriage contract to presently enter into the marriage relation, permanent and exclusive of all others, to which we will sometimes hereinafter refer simply as mutual consent, must be followed by a public recognition of the existence of the common-law marriage.—Goodman v. McMillan, 258 Ala. 125, 61 So.2d 55.

There is a lack of uniformity in the language used in our cases to depict the manner in which the man and woman must have lived, following their mutual consent, to constitute a valid common-law marriage. In some cases it is said that the mutual consent must be followed by cohabitation.—Herd v. Herd, *supra;* Ashley v. State, 109 Ala. 48, 19 So. 917; Hawkins v. Hawkins, 142 Ala. 571, 38 So. 640. In other cases it is said that the mutual consent should be followed by cohabitation and living together as man and wife. In some cases it is said, in effect, that the mutual consent should be consummated by cohabitation as man and wife *or* their mutual assumption openly of marital duties and obligations.— White v. Hills, *supra;* Goodman v. McMillan, *supra;* Brown v. Brown, 276 Ala. 153, 159 So.2d 855; Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166. It has also been said, in effect, that the mutual consent should be followed

by cohabitation as man and wife *and* their mutual assumption openly of marital duties and obligations.—Campbell v. Rice, 245 Ala. 395, 17 So.2d 162; King v. King, 269 Ala. 468, 114 So.2d 145.

We find in none of our common-law marriage cases a clear-cut definition of the word "cohabitation" or an explanation of the use of the words "living together as man and wife" in conjunction with the word "cohabitation." Nor can we ascertain from those cases what the words "mutual assumption openly of marital duties and obligations" were intended to add to the requirement that the mutual consent should be consummated by cohabitation as man and wife. Likewise, we are unable to determine from our cases why the word "or" is used between the clause "the mutual consent should be consummated by cohabitation between man and wife" and the clause "their mutual assumption openly of marital duties and obligations," while in other cases the word "and" is used between those clauses.

We see no occasion to become inundated in a sea of semantics, which would be the inevitable result if in this opinion we sought to explain why the writers of the several opinions referred to above have used different language to convey the same thought, namely, that in order to constitute a valid common-law marriage, the man and woman, following their mutual consent to live as man and wife, must so live as to gain the recognition of the public that they are living as man and wife rather than in a state of concubinage. *See* Huffmaster v. Huffmaster, *supra;* Goodman v. McMillan, *supra.*

■ The appellant contends in brief that the trial court erred in declaring that a common-law marriage existed because the evidence shows that at the time the court found that such relationship began and continuously thereafter until his death, Dr. Beck was without the mental capacity to consent or agree to enter into the marriage relationship.

We cannot consider that contention in that to do so we would have to deal with the sufficiency of the evidence and, as will be shown hereinafter, that question is not before us.

Supreme Court Rule 9 provides, in part, as follows:

"Appellant's brief under separate headings shall contain: * * * (b) Under the heading 'Statement of the Facts,' a condensed recital of the evidence in narrative form so as to present the substance clearly and concisely, referring to the pages of the transcript, and if the insufficiency of the evidence to sustain the verdict or finding, in fact or law, is assigned, then the statement shall contain a condensed recital of the evidence given by each witness in narrative form bearing on the points in issue so as to fully present the substance of the testimony of the witness clearly and concisely; * * *."

It is pointed out in appellee's brief that appellants in their brief have failed to comply with Supreme Court Rule 9(b) in that they do not include in their brief a condensed recital of the evidence which bears on the points in issue as given by each witness, in narrative form. In reply brief, appellants concede, in effect, that in their original brief they did not include a condensed recital of the pertinent testimony, in narrative form, as given by appellee's witnesses, but assert, nevertheless, that they substantially complied with Supreme Court Rule 9(b) in that in their original brief "the testimony of witnesses on which appellant [sic] relies is in narrative form."

Appellants are mistaken. They did not substantially comply with Supreme Court Rule 9(b). In Standard Oil Co. v. Johnson, 276 Ala. 578, 588, 165 So.2d 361, we quoted with approval from Slovick v. James I. Barnes Construction Co., 142 Cal.App.2d 618, 298 P.2d 923, 927, as follows:

" * * * 'Where an appellant claims that some particular issue of fact is not

sustained by the evidence, he is required to set forth in his brief *all of the material evidence on the point and not merely his own evidence.* If this is not done, the error assigned is deemed waived.' " (Emphasis supplied)

Appellants say in brief, in effect, that a common-law marriage can under no circumstances be valid if during such claimed relationship the parties did not engage in sexual intercourse. It is said in appellants' brief as follows: "Cohabitation and living together as man and wife include their sexual relations, *and sexual intercourse is an indispensable element of a common law marriage."* (Emphasis supplied)

Two of our cases are cited in support of the statement last italicized above, namely, Herd v. Herd, *supra,* and Smith v. Smith, 247 Ala. 213, 23 So.2d 605.

That statement finds no support in the *Herd* case. In the opinion in that case it is said that the question for decision was single and clear-cut. It was whether cohabitation had to follow a marriage agreement, *per verba de praesenti,* that is, a present agreement to become husband and wife, in order to constitute a valid common-law marriage. The question was answered in the affirmative. But nothing was said in the opinion as to what constitutes cohabitation in the context in which that word was used. Certainly the opinion does not say that "sexual intercourse is an indispensable element of a common law marriage." We do not think that any holding in Smith v. Smith, *supra,* is supportive of the statement for which we have said it was cited in appellants' brief. In that case the appellee, a soldier, had testified that while he was on furlough, on one or two nights in July of 1943 he slept in the same bed with appellant, who claimed to be his common-law wife, but he denied having sexual relations with appellant on those nights. The opinion does contain observations which are to to the effect that the court did not believe appellee's statement that he had not had sexual intercourse with the appellant on his visit in July, 1943, in that he admitted occupying the same bed with appellant and both parties were young and there was no evidence that either of the parties was sexually deficient. But the reference to the sexual aspects of the case cannot be considered as indicating that unless sexual intercourse between the parties had been shown, this court would have concluded that a common-law marriage did not exist. Certainly the *Smith* case, *supra,* is not authority for the principle that there can be no valid common-law marriage where there is an absence of sexual intercourse between the man and woman irrespective of the age and physical infirmities of one or of both of them. In fact, we think the opinion in that case is perhaps subject to the opposite construction.

The only Alabama case which has come to our attention which, at least on first reading, tends to support appellants' position presently under consideration is Cox v. State, 117 Ala. 103, 23 So. 806, which arose under an indictment founded on § 4406 of the Criminal Code of 1896, which section read:

"If any person having a former husband or wife living, marries another, or continues to cohabit with such second husband or wife in this State, he or she must, on conviction, be imprisoned in the penitentiary for not less than two nor more than five years."

The statute just quoted was interpreted in the *Cox* case, *supra,* as (1) declaring the common law offense of bigamy [marries another] and (2) creating a second offense of continued cohabitation under the second marriage [continues to cohabit * * * in this state]. Apparently the second offense of continued cohabitation was created to allow prosecution in this state where the bigamous relationship was entered into in another state but was continued in this state.

The evidence was without conflict that the defendant, having a wife living in

Alabama, married a second woman in Tennessee. Defendant and the second woman lived in Alabama as man and wife for an unstated length of time and then moved back to Tennessee. Five weeks before the indictment, defendant and the second woman returned to Alabama, again living as man and wife.

In defense of the charge against him, the defendant introduced evidence that due to a surgical operation, the second wife had for more than three years been incapable of sexual intercourse and that they had not had such intercourse in Alabama since their return to this state. Based upon this evidence, the defendant requested several instructions to the effect that continuous sexual intercourse is an indispensable element of the statutory offense of bigamy as defined in § 4406 of the Criminal Code of 1896 and that failure to show such intercourse entitled the defendant to an acquittal. The charges were refused. This court in an opinion prepared by Mr. Chief Justice Brickell affirmed the refusal of those charges.

· As we view the *Cox* case, the central issue there present was whether the defendant could be convicted of "continued cohabitation" during the period of time that he dwelled in this state with the second woman without having sexual intercourse with her. The statute of limitations had run as to the period of time during which the defendant previously lived in Alabama with the second woman and had sexual intercourse with her. In the opinion in *Cox* it is said: "We do not doubt that sexual intercourse is a necessary ingredient of the statutory offense." It is pointed out in the opinion that that statute from its original enactment had been associated with other statutes creating or declaratory of offenses of which such intercourse is the essential incriminating element. But the opinion goes further to say that, apart from this association of the statute with other statutes, the language of § 4406, *supra*, "continues to cohabit with such second husband or wife," implies or involves sexual intercourse, citing various definitions of the word "cohabit."

We do not intend to in any wise reflect upon the holding in Cox v. State, *supra*, but we do not think that holding is dispositive of the question with which we are presently confronted, namely, whether or not sexual intercourse is an indispensable element in a common-law marriage.

Cohabitation is not a mere gratification of sexual passion, or casual commerce between man and woman, and no presumption can elevate concubinage of whatever duration to the dignity of marriage. It has been said that parties may eat, live and sleep together as mistress and keeper without intention of entering into marriage. See Topper v. Perry, 197 Mo. 531, 95 S.W. 203, 114 Am.St.Rep. 777. It seems to us to follow that where a man and a woman have the present understanding that they are to live together as husband and wife and so live that the general public is led to believe they are in fact man and wife, it is not necessary in all cases for it to appear that the parties engaged in sexual intercourse where the validity of their claimed common-law marriage is questioned.

We think cohabitation as that word is used in our cases encompasses many factors which are necessarily involved when a man and a woman dwell together as man and wife. We think it may or may not, under the circumstances of the particular case, include sexual activity, but it does include such things as eating together, sharing household duties, payment of household expenses, holding themselves out to the public as man and wife, and all of the numerous aspects of day-to-day mutual existence of married persons. We have said that in determining whether a relationship between a man and a woman amounts to a common-law marriage, the courts must determine each case on its own particular facts, having regard to the circumstances of the parties.—Turner v. Turner, *supra*.

Indeed, sexual activities are strongly indicative and are natural elements of the marital relationship. However, under certain circumstances they are not determinative of that relationship. As the human aging process progresses past a certain point, sexual activity decreases and eventually may disappear. Physical infirmities in people of advanced years may well prevent a man and woman from engaging in sexual intercourse. It seems reasonable to us to conclude that when sexual activity is no longer possible, because of age or physical infirmity, it is no longer a persuasive element in the determination of whether or not a common-law marriage did in fact exist between a man and woman. Certainly, we do not think it should be held that sexual inadequacy or impossibility alone can prevent a common-law marriage where all of the other ingredients are shown to exist.

 We realize that in our former decisions it has not been held that there can be a valid common-law marriage without coition, but it has not been held to the contrary, and we think that reason dictates that under circumstances where advanced age or physical infirmity are shown to have prevented the parties from engaging in sexual intercourse, the absence of that act alone should not operate to prevent a common-law marriage.

In this case, the trial court could only have reached the conclusion that no intercourse occurred between Dr. Beck and the appellee on the basis of testimony elicited from doctors and others similarly circumstanced to the effect that Dr. Beck, by reason of his illness, could not have engaged in the sexual act.

As we have stated above, we have not dealt with the sufficiency of the evidence in any respect. We cannot do so since the appellants have not complied with the provisions of Supreme Court Rule 9(b).

We hold that no question presented for our determination on this appeal can be answered in such a way as to justify a reversal of the decree of the trial court here under review. It follows, therefore, that the decree of the trial court is due to be affirmed. It is so ordered.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.