296 So.2d 715

**Clara Ann Capps KRUG**

v.

**Raymond H. KRUG, Sr., et al.**

**SC 667.**

Supreme Court of Alabama.

June 20, 1974.

Charles T. Reese, Enterprise, for appellant.

Cassady & Fuller, Enterprise, for appellees.

MERRILL, Justice.

This appeal is from a decree which held that the marriage between appellant, Clara Ann Capps Krug, and Raymond H. Krug, Jr., a soldier now deceased, on December 31, 1969 was "void and of no legal force and effect" and that there was "no common law marriage, in compliance with the law, between these parties."

The complainants-appellees, the father and mother of Raymond H. Krug, Jr., filed the bill of complaint against Raymond Jr.'s wife, Clara Ann, and the bill, as last amended, sought to declare their marriage invalid, to acquire Raymond Jr.'s personal property, to remove his body from its burial place in Enterprise to the State of Wisconsin, to declare his will invalid and to annul its probate and to secure a declaration of rights as to the service insurance policy.

The cause was presented by stipulation and exhibits. The undisputed facts are that on June 8, 1967, Clara Ann, who had always lived in Coffee County, Alabama, was married to Gordon A. Cook and that marriage was terminated by divorce on December 23, 1969, in Coffee County. The divorce decree contained the statutory language required in Alabama, that "neither party to this suit shall again marry, except to each other until 60 days after the rendition of this decree," which is required by Tit. 34, § 38, Code 1940.

Nevertheless, Raymond Jr. and Clara Ann, both 19 years of age, went to Georgia and were married on December 31, 1969. Raymond Jr. was stationed at Ft. Rucker. They returned to Coffee County after the marriage and on January 2, 1970, he designated "Clara Ann Krug" as beneficiary under his Servicemens Life Insurance Policy, and on January 7, he executed a will devising all his property to "my wife, Clara Ann Krug," and also executed a power of attorney to his wife. A joint checking account was opened at a bank in Enterprise with personalized checks showing both of their names.

They visited Raymond Jr.'s parents in Wisconsin. He introduced Clara Ann as his wife and his parents had a reception for them and introduced Clara Ann as his wife. They received some gifts, at least some money, at the reception. They lived

together in Wisconsin as they had in Alabama and held each other out to the people as husband and wife.

They returned to Alabama and Raymond Jr. secured a credit card for Clara Ann, secured an identification card for her as his wife entitling her to the privileges of a military dependent, including the Officer's Club at Ft. Rucker, all of which Clara Ann used. On January 24, he executed an allotment authorization whereby the Army was authorized to allot to "Mrs. Clara A. Krug, wife, the sum of $300.00 per month as support," showing her address to be New Brockton, Alabama.

On January 19, 1970, Raymond Jr. left Ft. Rucker under military orders to serve in Viet Nam. The 60-day prohibition in Clara Ann's divorce decree expired on February 21, 1970.

While in Viet Nam, Raymond Jr. sent Clara Ann additional money, they exchanged letters almost daily, and tapes frequently, he addressed her mail to Mrs. Raymond H. Krug, Jr. He wrote of his desires to start a family and he·started a Series E bond allotment to her and the bonds were made payable to her and to him.

Raymond H. Krug, Jr. was killed in action on May 14, 1970.

The trial court's opinion is full and comprehensive. We can agree with the statement in appellees' brief that: "The most learned trial judge wrote one of the most studious, clear cut opinions ever handed down by a lower court," and with appellant's statement that it is "a lengthy and scholarly opinion." In the opinion most of the pertinent cases of this court are reviewed and analyzed. The trial court held that (1) the marriage was void because of the prohibition in Tit. 34, § 38; (2) there was no common-law marriage; (3) the will was not properly proved and the property of Raymond Jr. held by Clara Ann should be delivered to his parents; (4) the prayer

to remove the body of Raymond H. Krug, Jr. from its burial place in Enterprise to the State of Wisconsin was denied; and the proceeds of the service insurance policy which had been paid into court was the property of Clara Ann.

It appears that the trial court was somewhat reluctant to hold that the marriage was void and that there was no common-law marriage, but felt "compelled" to do so under our decisions which the court was trying to follow.

We agree with the court's statement in its opinion that: "The court is impressed that the case at bar may be of first impression on the particular facts and circumstances indicated."

It is our opinion that the particular facts and circumstances of this case place it without the application of our cases which support the result reached by the trial court.

■ Except for instances not here pertinent, a marriage valid where celebrated is valid everywhere. Osoinach v. Watkins, 235 Ala. 564, 180 So. 577, 117 ALR 179; Smith v. Goldsmith, 223 Ala. 155, 134 So. 651.

■ A statutory post-divorce restriction has no extraterritorial effect and does not invalidate a subsequent marriage solemnized in another state. Smith v. Goldsmith, 223 Ala. 155, 134 So. 651; Boyles v. Wallace, 208 Ala. 213, 93 So. 908. See Marzano v. Marzano, Sup., 154 N.Y.S.2d 507, where the Alabama statute, Tit. 34, § 38, was held to have no extraterritorial effect.

■ The validity of the marriage in Georgia in the instant case is not questioned and it is conceded that it was valid in Georgia. The divorce preceding that marriage was "absolute, and statutory or decretal restrictions aside, both parties would be free to again contract marriage."

Smith v. Goldsmith, supra; and in Fitts v. Fitts, 284 Ala. 109, 222 So.2d 696, this court held that no authority exists in Alabama to grant a nisi or interlocutory decree of divorce; and ordinarily a divorce a vinculo matrimonii terminates the marriage relation as effectively as the death of either party. The ceremonial marriage in Georgia was valid.

But Clara Ann was under the 60-day restriction of § 38, and she and Raymond Jr. returned to Alabama after their Georgia marriage. We have cases which hold that she possibly could have been subject to prosecution for bigamy if she remarried during that 60-day period of limitation. Vance v. State, 210 Ala. 9, 97 So. 230; Brand v. State, 242 Ala. 15, 6 So.2d 446. Under these authorities, the Georgia marriage, though valid there, could be questioned in Alabama during the 60-day period.

■ It is established in this jurisdiction that where parties who are incompetent to marry enter an illicit relation, with a manifest desire and intention to live in a matrimonial union, rather than in a state of concubinage, and the obstacle to their marriage is subsequently removed, their continued cohabitation raises a presumption of an actual marriage immediately after the removal of the obstacle, and warrants a finding to that effect. Smith v. Smith, 247 Ala. 213, 23 So.2d 605; Prince v. Edwards, 175 Ala. 532, 57 So. 714.

■ It is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marriage, and they continue to cohabit as man and wife after the removal of the impediment to their lawful union, the law presumes a common-law marriage. King v. King, 269 Ala. 468, 114 So.2d 145, and cases there cited.

The only obstacle or impediment to this marriage in Alabama was the 60-day waiting period, and once that passed, a common-law marriage would be presumed.

That brings us to the real issue in the case—whether a common-law marriage could be presumed in the instant case.

■ To constitute a common-law marriage in this state, there must first have been a mutual understanding to presently enter into the marriage relationship, permanent and exclusive of all others, after which there is a public recognition of the existence of a common law marriage. Turner v. Turner, 251 Ala. 295, 37 So.2d 186; Beck v. Beck, 286 Ala. 692, 246 So.2d 420.

■ There is no question but that every stated requirement was met in this marriage so that it could be presumed to be a common-law marriage. The trial court stated: "This court is firmly of the opinion from the evidence that the parties fully meant to be husband and wife; they held themselves out to be such and all the evidence indicates that they considered themselves married." But the trial court quoted the following from *Beck*, supra: " * * * that in order to constitute a valid common-law marriage, the man and woman, following their mutual consent to live as man and wife, must so live as to gain the recognition of the public that they are living as man and wife rather than in a state of concubinage. * * *" Also quoted is another excerpt from *Beck* where this court, in discussing the word "cohabitation" stated that cohabitation may or may not include sexual activity, but it does include " * * * such things as eating together, sharing household duties, payment of household expenses, holding themselves out to the public as man and wife, and all of the numerous aspects of day-to-day mutual existence of married persons. * * *"

Since the 60-day prohibitory period extended to February 21, 1970, and Raymond Jr. left for Viet Nam on January 19, the trial court concluded that he and Clara Ann did not live together for any time after the obstacle or impediment to their mar-

riage had been removed. The trial court's opinion on this point concludes:

" * * * Certainly these parties were not eating together, sharing household duties, and doing the numerous aspects of day to day mutual existence for the reason that he was at war and she was at home. In an attempt to go no further than our courts have gone, this court feels that it must hold that these parties were not married under the common law, and so determines."

The *Beck* case, the *Turner* case and Goodman v. McMillan, 258 Ala. 125, 61 So.2d 55, all hold that in cases involving the question of a common-law marriage, the court must determine each case on its own particular facts, having regard to the circumstances of the parties.

Here, the only single reason for not holding this marriage a valid common-law marriage is that the parties did not *live together* after the statutory impediment was removed. While the couple did not live together after the statutory impediment was removed in the sense that they were in the same house or in the same locality, nevertheless, they did live as husband and wife and the facts come sufficiently under this court's holding in Beck v. Beck, 286 Ala. 692, 246 So.2d 420, to clearly show that there was a sufficient living together to gain the recognition of the public that they were living as husband and wife rather than in a state of concubinage. The wife was the daily beneficiary of her husband's planning and love. He supported her. He provided marriage fringe benefits, including a club membership. He wrote her almost daily. What more could be expected of an absent husband. She, likewise, wrote him almost daily and sent him tapes frequently. Plans for the future were being jointly made.

We have set forth just a few instances which support the premise that they were living as husband and wife, though thousands of miles apart, and their activities were such to gain the recognition of the public of marital status. One could hardly say that absence from the same house or the same locality is such that their activities can not gain public recognition of their marital status.

Here, the only reason they did not live together was that the husband had been ordered to combat duty in Viet Nam where his wife could not accompany him and live with him. There is ample evidence that after the statutory impediment had been removed that the parties still considered themselves man and wife and held each other out as such. Their separation was not voluntary, but made so by Army orders.

In weighing the particular undisputed facts of this case and having regard to the peculiar circumstances of these parties, we hold that this marriage was entitled to the protection accorded a common-law marriage.

It results that the decree of the trial court is reversed in holding that the marriage is void and of no legal effect; and that there was no common-law marriage between the parties; and that any property of the husband should be turned over to the complainants; and the decree is affirmed in all other respects.

There was no assignment of error challenging the ruling that the will was not properly proved. We do not discuss this feature of the case.

Affirmed in part, reversed in part and remanded.

HEFLIN, C. J., and HARWOOD, MADDOX, McCALL and FAULKNER, JJ., concur.