Following an ore tenus hearing, the Circuit Court of Bibb County entered a judgment holding that Louise Etheridge was not the common law wife of Joe Yeager, and setting aside letters of administration theretofore granted to her by the Probate Court of Bibb County. Etheridge appealed from that judgment. We affirm.
Ms. Etheridge, claiming to be the widow, petitioned the Bibb County Probate Court for letters of administration on the estate of Joe Yeager. That court granted the letters. Shortly thereafter, however, the brother and sisters of Joe Yeager filed a contest of her letters and petitioned for the removal of the administration to Bibb Circuit Court. That petition was granted, and an ore tenus nonjury hearing ensued. After the entry of the final order, Ms. Etheridge moved for a new trial on the basis of newly discovered evidence. That motion was denied. She then appealed, raising two issues:
(1) Whether the trial court was plainly and palpably wrong in holding that Louise Etheridge and Joe Yeager were not husband and wife under common law; and
(2) Whether the trial court erred in denying the motion for a new trial.
A summary of the evidence will suffice to disclose its divided nature.
On the one hand, Ms. Etheridge's evidence was that she began living with Yeager after her (first) husband had died and Yeager had been divorced from his second wife. They lived together continuously from 1970 until Yeager's death in 1982. Ms. Etheridge produced mail she had received as Mrs. Joe Yeager. Three neighbors testified that they thought Joe and Louise were married, because Joe had referred to Louise as his wife, and that their general reputation in the community was that of husband and wife. Evidence was produced that Louise was listed as part of the household on Yeager's application for food stamps. Yeager's nephew and Louise's two daughters testified that they thought Louise and Joe were married.
The contestants' evidence showed, however, that Louise kept a bank account in the name of Etheridge, and that in 1982 she had registered to vote under the name of Etheridge. Each of the contestants testified that when they asked Joe if he and Louise were married he replied that he was not going to marry anyone. There was some evidence that Joe had told Louise that he did not want her to sign her name as "Yeager." Louise herself testified to her belief that they were married because, she said, "I lived with him long enough." Joe Yeager's application for food stamps did not list Louise under the box marked "spouse" provided in the form, but in the category of "member of household." The food stamp representative testified that Yeager had listed, as members of his household, himself and Annie J. Etheridge, and that he had stated that "he and Ms. Etheridge lived together as man and wife." This representative later explained that her testimony was based upon her summation of their interview, and that she could not state that those were his exact words.
There have been a number of expressions from this Court setting forth the requirements for a common law marriage. InSkipworth v. Skipworth, 360 So.2d 975, 976 (Ala. 1978), this Court stated:
 "No ceremony and no particular words are necessary. Instead, there must first have been a present agreement, that is, a mutual understanding to enter at that time into the marriage relationship, permanent and exclusive of all others. This agreement must be followed by public recognition of the existence of the `marriage' and cohabitation or mutual assumption openly of marital duties and obligations. See Beck v. Beck, 286 Ala. 692, 697-98, 246 So.2d 420, 425-26 (1971) and cases cited therein."
Piel v. Brown, 361 So.2d 90, 94-95 (Ala. 1978), also explores the requirements:
 "Certainly the law requires mutual understanding between two people to presently enter into the marriage relationship. However, proof of actual words
of agreement or consent has never *Page 380 
been required by this Court, rather, the test is one of intention in accord with the language of Beck v. Beck, [cited in the preceding quotation]: `[n]o ceremony and no particular words are necessary to constitute a valid common-law marriage.' That intention can be inferred from the circumstances. [Sloss-Sheffield Steel Iron Co. v.] Watford, [245 Ala. 425, 17 So.2d 166 (1944).] And the court must determine that intention in each case according to its own particular facts and the circumstances of the parties, Beck v. Beck, supra; Goodman v. McMillan, [258 Ala. 125, 61 So.2d 55 (1952)].
 "In all cases then, the question is whether the evidence discloses facts manifesting a mutual intention by the parties to be man and wife. This manifestation must show present intention, not an intention to marry in the future. Humphrey v. Humphrey, 293 Ala. 118, 300 So.2d 376 (1974); Turner v. Turner, 251 Ala. 295, 37 So.2d 186 (1948). . . .
". . . .
 ". . . It has been said that due to the serious nature of the marriage relationship, the courts will closely scrutinize a claim of common-law marriage and require clear and convincing proof thereof. Reynolds v. Scott, 257 Ala. 670, 60 So.2d 690 (1952); Goodman v. McMillan, 258 Ala. 125, 61 So.2d 55 (1952); Bishop v. Bishop, 57 Ala. App. 619, 330 So.2d 443 (1976). . . ."
In Goodman v. McMillan, 258 Ala. 125 at 130, 61 So.2d 55 at 59 (1952), this Court repeated the principle that:
 "Mere cohabitation and repute or circumstances which only show mutual consent of the parties do not establish of themselves a common law marriage. There must be words of present assent `per verba de praesenti' to lawfully contract marriage, followed by cohabitation or the open mutual assumption of marital duties and obligations. [Citations omitted.]"
That opinion added at 258 Ala. 131, 61 So.2d 60:
 "We have pointed out in previous decisions the exigencies which brought about recognition of the common law marriage. That considerations of public policy, to protect the family status in a frontier country, inspired the adoption of the rule. But courts have been careful to deprecate and view with disapproval a status not clearly shown to have been a bona fide one and in our present day the pioneer conditions which fostered the rule no longer obtain. Each case must be determined on its own particular facts, having regard to the situations of the parties and their status in life. A pertinent inquiry is to determine the attitude of the parties with respect to marriage and the common law relationship."
After hearing the ore tenus testimony and reviewing the conflicting evidence, the trial judge decided that there was a lack of present intent to be married. The scope of this Court's review, then, is first to determine if the record contains any
competent evidence supporting the trial judge's final decree.Humphrey v. Humphrey, 293 Ala. 118, 300 So.2d 376 (1974). There was evidence supporting the decree, the bank account and voter registration in the name of Ms. Etheridge; testimony that the defendant and the deceased had both stated that they were not married when asked by the plaintiffs; and Yeager's own statements. The undisputed fact that Louise and Joe lived together from 1970 until his death is not alone enough to establish the "requisite mutual intent" required by law. Id.
In Alabama, a judgment rendered in a nonjury case tried oretenus is accorded a presumption of correctness that can only be reversed if "plainly and palpably wrong." Kwick Set Components,Inc. v. Davidson, 411 So.2d 134 (Ala. 1982). The evaluation of oral testimony is within the power of the court as trier of fact, Smith v. Holloway, 262 Ala. 273, 78 So.2d 318 (1955), with the court having the responsibility to decide the credibility and correctness of that testimony. Underwood v.Jarvis, 358 So.2d 731 (Ala. 1978). Furthermore, "[i]t is not the province of this court *Page 381 
to substitute its judgment for that of the trier of facts unless his findings are palpably wrong." Forest InvestmentCorp. v. Commercial Credit Corp., 271 Ala. 8, 12,122 So.2d 131, 134 (1960). Since there was evidence which supported the trial court's finding of no common law marriage, and since that finding is not plainly and palpably wrong, that judgment will not be disturbed on appeal.
The newly discovered evidence asserted as a ground supporting Ms. Etheridge's motion for a new trial consisted of a determination by the Veterans Administration, sometime after the trial, that she was entitled to benefits as the widow of Joe Yeager. With deference to able counsel's arguments, this evidence was cumulative, did not refute the evidence supporting the trial court's decision, and has not been shown likely to change the result if a new trial were granted. See ForestInvestment Corp., supra.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.