69 So.2d 431

**VINSON v. VINSON.**

6 Div. 563.

Supreme Court of Alabama.

Nov. 5, 1953.

Rehearing Denied Jan. 21, 1954.

Jerry O. Lorant and R. J. McClure, Birmingham, for appellant.

STAKELY, Justice.

Jesse Vinson (appellee) filed his bill of complaint in the equity court to annul his marriage with Rosa Lee Vinson (appellant). The theory of the bill is that at the time appellee and appellant were married, appellant was the lawful wife of one Charlie Hall. The appellant filed an answer and cross-bill denying the invalidity of her marriage to the appellee and on the contrary alleging the validity thereof, and praying for maintenance and support in view of the voluntary abandonment of her by the appellee. The court entered a, final decree dismissing the cross-bill of the appellant and granting the relief prayed for in the appellee's bill of complaint. The appeal is from the aforesaid decree.

Morel Montgomery, Birmingham, for appellee.

I. The decree from which the appeal was taken was entered on Septem-

ber 12, 1952. The appeal was taken on March 2, 1953. The proposition is advanced that the appeal comes too late, since it is governed by § 789, Title 7, Code of 1940, which provides that appeals from decrees of divorce must be taken within sixty days from the date upon which such decree of divorce was rendered. There is no merit in this position. The appeal is not from a decree of divorce but is from a decree annuling an alleged marriage. The appeal is governed therefore by § 788, Title 7, Code of 1940, which provides for an appeal within six months from the rendition of the decree. Moor v. Moor, 211 Ala. 56, 99 So. 316.

II. The appellant married the appellee on September 20, 1945, at the court house in Birmingham, Jefferson County, Alabama. They lived together as husband and wife from that date until June 29, 1952, when the appellee left the appellant at the home of appellee, where he had taken her immediately following their marriage in 1945. Prior to this marriage appellant had lived at 2501 18th Street North, Birmingham, Alabama, from 1936 to the date of her marriage with appellee, with her son, who was named Moses Hall after his father, Charlie Hall.

The basis of the appellee's case is that when he married the appellant in the ceremonial marriage of September 20, 1945, she was the wife of Charlie Hall under a common-law marriage. Tendencies of the evidence show that the appellant lived with Charlie Hall in Gadsden during the year 1931 at which time Charlie Hall was married to Mercy Hall. Charlie Hall was divorced from Mercy Hall on February 27, 1935.

It is not disputed that appellant returned to the home of her father, Ben Groce, from Gadsden in 1934 and remained at her father's home until 1936. In 1936 she and her son, Moses Hall, moved with her furniture from her father's home to the house owned by Charlie Hall at 2501 18th Street North, Birimingham, Alabama. She stayed in this house until she married the appellee. The proof shows that Charlie Hall came to this house at intervals from once a month to about once a week at times, with a general average of about twice a month. He was a railroad man and generally stayed overnight and did not keep his clothes or personal effects in this house but carried them with him. The appellee and Charlie Hall lived together as aforesaid in this house owned by Charlie Hall for about eight or nine years, but during this period he contributed nothing to the support of his son or appellant, except to allow them the use of his house, and in various transactions her name appears as R. L. Groce. In this name, for example, she made a deposit to the Birmingham Water Works Company for water service. She took out a policy of life insurance issued by the Liberty National Life Ins. Co. in the name of Rosa Groce. She took an endowment and disability policy of insurance with the National Life and Accident Ins. Co. in the name of Rosa L. Groce with her son, Moses Hall, as beneficiary. She took out a policy of insurance with the Life & Casualty Insurance Company of Tennessee with Moses Hall as the insured and Rosa Groce as beneficiary. She obtained a health certificate from the Alabama State Board of Health on May 26, 1945, in the name of Rosa Lee Groce. The birth certificate of Moses Hall issued in Gadsden, Alabama, shows Charlie Hall as the father and Rosa L. Groce as the mother. There is no proof of any agreement between the appellant and Charlie Hall to live together as husband and wife and there is no proof that they held themselves out to the world as husband and wife. There is no proof that their neighbors or friends knew of them as husband and wife.

Charlie Hall married Ida Gray during the time appellant was living in Charlie Hall's home on January 21, 1942. Shortly after he married, Charlie Hall told Ida Gray that he had a little boy and wanted to bring him to their home in Talladega and that the boy was being kept by his cousin. Charlie Hall claimed Talladega as his home and had been living there or was living there at the time he married Ida Gray. After he married Ida Gray, Charlie Hall worked for the Deaf and Dumb School

at Talladega for a period of seven years. He died on August 27, 1952.

There is no proof of the dissolution of any marriage between Charlie Hall and appellant by proof of the record of a decree of divorce. There is proof that when appellee married appellant, after he had known her only about one month, she gave her name as Rosa Hall, that she told appellee she had been married to Charlie Hall but had been divorced from him in Anniston. She did not produce "the divorce paper". The license to marry appellee was issued to her in the name of Rosa Groce. Appellee left appellant on the 29th or 30th day of June, 1952, and has not lived with her since that time.

■ III. At the time appellant began her cohabitation with Charlie Hall and for a short time subsequent to the birth of Moses Hall in 1931, Charlie Hall was disqualified from entering into a marriage with appellant because he was at that time married to Mercy Hall. Clark v. Glenn, 249 Ala. 342, 31 So.2d 507. Furthermore, since the living together of Charlie Hall and appellant was illicit in its commencement, it is presumed to continue so until a changed relation is proven. Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485. The proof shows that Charlie Hall was divorced from Mercy Hall on February 27, 1935. But as we have pointed out, there was no proof that at any time subsequent to the divorce of Mercy Hall and Charlie Hall that Charlie Hall and appellant lived together in such a manner as to constitute a common-law marriage. They lived together in the house of Charlie Hall in Birmingham for eight or nine years and previously had had a son born of their relationship, but there must be more than mere cohabitation to establish a common-law marriage. The appellant denied that she ever had a mutual understanding with Charlie Hall to live with him as husband and wife. Gilbreath v. Lewis, supra.

■ There was no public recognition by either Charlie Hall or appellant of any relationship of husband and wife and there ■ no such recognition by the public.

260 Ala.—17

Our cases make it clear that in order to constitute a common-law marriage there must be some public recognition of the marriage as necessary evidence of its existence. In Gilbreath v. Lewis, supra, it was said in effect that considerations of public policy require such recognition. According to Gilbreath v. Lewis, supra, the marriage relationship may be shown in any way that can be seen and known by others, such as living together as man and wife, treating each other and speaking of each other in the presence of third parties as being in that relation and declaring the relation in documents executed by them while living together, such as in deeds, wills and other formal instruments.

"* * * '* * * From such recognition the reputation of being married will obtain among friends, associates, and acquaintances, which is of itself evidence of a persuasive character. Without it, the existence of the marriage will always be a matter of uncertainty'." Gilbreath v. Lewis, supra [242 Ala. 510, 7 So.2d 489].

In the case last mentioned the following was quoted with approval and reaffirmed with approval in Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166, 168:

"* * * 'Cohabitation and reputation are at best only presumptive proofs, and when one of these foundations is withdrawn, what remains is too weak to build a presumption on. There is good sense in the Scotch law, by which cohabitation alone is considered insufficient, and which required in addition habit and repute, because it is said the parties may eat, live, and sleep together as mistress and keeper without any intention of entering into marriage.' "

While the appellant was living with Charlie Hall she always gave her name even in written instruments as Rosa Groce. Charlie Hall never contributed anything to the support of her or of their child, except that he allowed them the use of a house which he owned in Birmingham.

Without dispute Charlie Hall went through with a ceremonial marriage with another woman in January, 1942, and took his wife to his home in Talladega, Alabama, telling his wife, Ida Hall, that he had a son who was being kept by his cousin in Birmingham. Ida Hall sent a telegram in response to which appellant went to Talladega in 1942. She then told Ida Hall that she was not Charlie Hall's cousin, that "I am Rosa Groce, the little boy's mother." His marriage to Ida Hall tends to indicate that he did not marry appellant. Sloss-Sheffield Steel & Iron Co. v. Watford, supra; White v. White, 225 Ala. 155, 142 So. 524.

But assuming for the sake of argument that there was a common-law marriage between Charlie Hall and appellant at the time appellant married appellee, there is no proof in the record that such common-law marriage has not been legally dissolved. The Alabama authorities hold that the validity of the last marriage will be presumed and will be recognized as the marriage between the parties unless there is sufficient proof that there has been no dissolution of the first marriage. The law casts a strict burden upon the appellee to show that his marriage to appellant was illegal by proving a negative, that is that appellant and Charlie Hall had not been divorced. Appellee testified that when he married appellant she told him that she had been divorced from Charlie Hall. Appellant denied that she made such statements. But apart from this appellee's testimony as to the statements made to him by the appellant must be supported by legal evidence that the divorce courts of all the counties in the state which would have jurisdiction of such a suit did not have a record of a decree of divorce. According to the evidence such a suit might have been maintained in Calhoun County or in Jefferson County or possibly in Etowah County. There was no legal evidence offered as to such records and, therefore, we do not have before us sufficient legal proof, that there was no dissolution of the marriage between Charlie Hall and appellant, if there was such a marriage. Whitman v. Whitman, 253 Ala. 643, 46 So.2d 422;

Faggard v. Filipowich, 248 Ala. 182, 27 So.2d 10; Dorsey v. Dorsey, Ala.Sup., 66 So.2d 135.

Before closing the opinion, while not argued by counsel, we think it would be well to refer to the death of Charlie Hall. His death cannot affect the rights of the parties in this case. It cannot be claimed that his death removed an impediment to the marriage between appellant and appellee, if there was a marriage between appellant and Charlie Hall, since appellant and appellee did not continue to live together as man and wife after removal of the impediment. Smith v. Smith, 247 Ala. 213, 23 So.2d 605.

For the deficiencies in the proof which we have pointed out the decree of the lower court must be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.