THOMAS, Judge.
John Lewis Reese appeals from a judgment of the Lee Circuit Court determining that he and Kathleen T. Holston had *110 entered into a eommon-law marriage, divorcing the parties, and awarding Holston certain real property. We reverse and remand.
On January 29, 2008, Holston filed a complaint for a divorce in the trial court, alleging that she and Reese had entered into a common-law marriage on December 23, 1999. Among other things, Holston requested that the trial court award her a house that she alleged had been the parties’ marital residence (“the property”). In response, Reese filed an answer denying that he and Holston had a common-law marriage.
The trial court conducted a hearing on December 18, 2009, at which it heard ore tenus evidence. Thereafter, on February 22, 2010, the trial court entered a judgment determining that a common-law marriage existed between the parties, divorcing the parties, awarding Holston the property, and ordering Holston to pay Reese $22,469.06 for his equity in the property and to assume the mortgage on the property. Reese filed a postjudgment motion, which the trial court denied. Reese subsequently appealed to this court.
On appeal, Reese argues that the trial court erred in determining that he and Holston had entered into a common-law marriage because, he says, the evidence was insufficient to support its determination.
The Alabama Supreme Court stated in Lofton v. Estate of Weaver, 611 So.2d 335, 336 (Ala.1992):
“‘Courts of this state closely scrutinize claims of common law marriage and require clear and convincing proof thereof.’ Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986), citing Walton v. Walton, 409 So.2d 858 (Ala.Civ.App.1982). A trial judge’s findings of facts based on ore tenus evidence are presumed correct, and a judgment based on those findings will not be reversed unless they are found to be plainly and palpably wrong. Copeland v. Richardson, 551 So.2d 353, 354 (Ala.1989). The trial court’s judgment must be viewed in light of all the evidence and all logical inferences therefrom, and it “will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ Adams v. Boan, 559 So.2d 1084, 1086 (Ala.1990) (citation omitted).”
Clear and convincing evidence is
“ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.’
“§ 6 — 11—20(b)(4), Ala.Code 1975.”
L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002).
“In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. Stringer [v. Stringer], 689 So.2d [194,] 195 [ (Ala.Civ.App.1997) ], quoting Crosson v. Crosson, 668 So.2d 868, 870 (Ala.Civ.App.1995), citing Boswell v. Boswell, 497 So.2d 479, 480 (Ala.1986). Whether the essential elements of a common-law marriage exist is a question of fact. Stringer, supra, citing Johnson v. John *111 son, 270 Ala. 587, 120 So.2d 739 (1960), and Arrow Trucking Lines v. Robinson, 507 So.2d 1332 (Ala.Civ.App.1987). Whether the parties had the intent, or the mutual assent, to enter the marriage relationship is also a question of fact. See Mickle v. State, 21 So. 66 (1896).”
Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App.2001).
Whether the parties had the capacity to enter into a common-law marriage is not at issue. Both parties conceded in the trial court and on appeal that they had the capacity to enter into marriage. The remaining questions are whether the parties had entered into a present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships, whether there was public recognition of the relationship as a marriage, and whether the parties publicly assumed marital duties and cohabited with each other.
According to Holston, in late December 1999, Reese asked her to marry him and she accepted his proposal. Holston stated that Reese gave her an engagement ring. Holston testified that she “said [a] prayer for us to be bound together as husband and wife until the day when he had set up for a wedding, for May 2, 2002. And we was in agreement for that.” Holston stated that they never had the planned wedding ceremony but that they lived together as husband and wife from December 23, 1999, forward. Delmonica Holston Wise, Holston’s daughter, testified that she and her husband were at her grandmother’s house on December 24, 1999, and that, on that date, Holston and Reese arrived at the house and announced that they had married. Wise also stated that Holston was wearing a wedding ring. She further testified that the parties had held themselves out to Holston’s family as husband and wife. Ethleen Jones, Holston’s sister, testified that on December 24, 1999, she had a telephone conversation with Holston, in which Holston told Jones that Holston and Reese had just married. Reese denied that he had given Holston an engagement ring or a wedding ring. He also denied ever asking Holston to marry him. Reese further testified that he had been dating three other women in December 1999.
Both parties testified that they did not have any joint bank accounts, credit cards, loans, or other financial instruments. Additionally, the parties did not purchase any jointly held property — real or personal. Holston testified that she and Reese filed a joint tax return in 2000 but that she had told Reese to stop filing joint returns because she had outstanding student loans and the loan providers had attempted to reach the parties’ tax refund. Holston did not enter the alleged joint tax return into evidence. Holston testified that she and Reese filed separate tax returns from 2001 to the present. Holston further testified that she continued to use Holston as her last name rather than Reese to protect Reese from being liable for her debts. According to Holston, she did obtain a credit card under the name of Kathleen Reese; she stated that her niece had filled out the application for the credit card. Holston stated that she had obtained that card after she had filed her complaint for a divorce.
Reese purchased the property from Hol-ston in February 1999; the property was in foreclosure at the time. After Reese purchased the property, Holston continued to live on the property and agreed to pay Reese $250 per month in rent. According to Holston, the payments were pursuant to an agreement between Holston and Reese for her to pay Reese back for his purchase of the property. Holston testified that she had paid Reese every month until she *112 moved off of the property in 2007. Hol-ston also testified that in 2004 she started helping to pay the electricity bill and the water bill associated with the property. Reese testified that Holston did not pay the agreed-upon rent for any month that she had lived on the property.
According to Holston, in December 1999, the parties started living together as husband and wife in Reese’s home in Wa-verly.' Holston stated that the parties moved from Reese’s home in Waverly in 2001 and began living on the property. Wise testified that she lived on the property in 2000 and paid Holston $250 per month in rent; she stated that Holston was living with Reese in Waverly at that time. In contrast, Reese testified that the parties never lived together in Waverly. He testified that Holston would sometimes spend the night with him in Waverly but that she did not leave any of her belongings in his home. Reese did admit that the parties had lived together on the property; however, he described the relationship as more of a landlord/tenant relationship. According to Reese, he and Holston had separate bedrooms, although he did state that they sometimes had sexual relations.
Reese testified that he sent Holston two eviction notices by certified mail in February 2004. Reese introduced the notices into evidence, along with the receipt from the post office showing that he had sent the notices by certified mail. However, Reese did not include the signature cards showing that Holston had received the notices. Holston denied that she had received the eviction notices. However, Hol-ston did acknowledge that Reese had asked her to leave the property several times.
Holston testified that everyone at her church believed that she and Reese had been ceremonially married. Holston stated that the people in her church believed that she and Reese were married because she had told them so and because her family had told them so. Holston did not state that Reese had represented to anyone at her church that the parties were married. In fact, Holston testified that Reese refused to attend her church. According to Holston, she sometimes attended Reese’s church; however, she stated that the only people at his church who believed that they were married were Reese’s family.
Holston introduced into evidence, over Reese’s objection, two funeral programs that listed her as Kathleen Reese. The first funeral program was for Holston’s mother, who had died in 2001. According to Holston, the program listed the parties as Kathleen and John Reese and stated that the parties were husband and wife. The second funeral program was for Reese’s first cousin, who died in 2008. According to Holston, that program listed Holston as Kathleen Reese.
As we stated above, the existence of a common-law marriage must be shown by clear and convincing evidence. See Lofton, 611 So.2d at 336. We conclude that the evidence presented by Holston is insufficient to show by clear and convincing evidence that the parties’ relationship was publicly recognized as a marriage and that the parties publicly assumed marital duties.
“It is indispensable that the parties must comport themselves in such a manner as to achieve public recognition of their status as common-law man and wife.” Bishop v. Bishop, 57 Ala.App. 619, 622, 330 So.2d 443, 445 (Ala.Civ.App.1976).
We have stated:
“ ‘[T]he marriage relationship may be shown in any way that can be known by others, such as living together as man *113 and wife, referring to each other in the presence of others as being in that relation, declaring the relation in various types of documents and transactions, sharing household duties and expenses, and generally engaging in “all of the numerous aspects of day-to-day mutual existence of married persons.” ’ ”
Hall v. Duster, 727 So.2d 834, 837 (Ala.Civ.App.1999) (quoting Bishop v. Bishop, 57 Ala.App. at 621, 330 So.2d at 445). The fact that the parties may have lived together or cohabited, standing alone, is insufficient to show that the parties had entered into a common-law marriage. See Beck v. Beck, 286 Ala. 692, 698, 246 So.2d 420, 426 (1971) (“[I]n order to constitute a valid common-law marriage, the man and woman, following their mutual consent to live as man and wife, must so live as to gain the recognition of the public that they are living as man and wife rather than in a state of concubinage.”).
In this case, the evidence shows that the parties did not handle their finances in a way that would be consistent with the existence of a marital relationship. The parties had no joint bank accounts, credit cards, or other financial obligations. Additionally, the parties held no jointly owned property. Holston stated that the parties had filed only one joint tax return and had filed separate returns for every other year. It also appears that Holston was paying Reese rent on the property, which is inconsistent with the conduct of people in a marital relationship. The lack of shared finances does not support the trial court’s determination that the parties had a common-law marriage. See Cluxton v. Cluxton, 431 So.2d 1296, 1298 (Ala.Civ.App.1983); Gray v. Bush, 835 So.2d 192, 195 (Ala.Civ.App.2001).
There is also insufficient evidence to show that the parties’ relationship was publicly recognized as a common-law marriage. Although Holston testified that she had told people at her church that she and Reese were married, it is also apparent from the record that Reese did not attend that church with her. Instead, Reese attended a separate church, where, according to Holston, only Reese’s family members believed that he and Holston were married. Holston did not present any testimony from members of her church or other members of the public regarding the existence of a common-law marriage. Similarly, the statements by Wise and Jones only prove that members of Holston’s family believed that Holston and Reese were married. The only other proof of public recognition of the parties’ alleged common-law marriage were the two funeral programs offered by Holston.[1] These two isolated documents, created by family members, are insufficient to “meet the required standard of a persuasive pattern of unambivalent conduct, but rather are too few and isolated.” Bishop, 57 Ala.App. at 622, 330 So.2d at 446.
Because the evidence before the trial court was insufficient to support its determination that the parties had clearly and convincingly entered into a common-law marriage, we reverse the trial court’s judgment insofar as it determined that the parties were married. Consequently, because we hold that the parties were not married, the trial court’s award of the property to Holston is also due to be re *114 versed. We therefore remand the cause with instructions for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. Reese argues on appeal that the trial court erred in admitting the funeral programs into evidence because, he argues, they were not properly authenticated, as required by Rule 901, Ala. R. Evid. Because we conclude that, even considering the funeral programs, the evidence was insufficient to support the existence of a common-law marriage, the trial court's error, if any, in admitting the funeral programs into evidence was harmless. See Dinmark v. Farrier, 510 So.2d 819, 820-21 (Ala.1987).