THOMPSON, Presiding Judge.
Linda Lee Cochran appeals from a judgment of the Mobile Circuit Court divorcing her from Joseph P. Chapman. For the reasons set forth herein, we reverse the trial court’s judgment.
This is the second time this action has been before this court. See Cochran v. Chapman, 21 So.3d 1244 (Ala.Civ.App.2008). We set forth some of the procedural history relevant to the present appeal in Cochran:
“On June 8, 2007, Chapman filed a complaint for a divorce against Cochran. Among other things, he alleged in his complaint that he and Cochran had married on December 31, 1989, and had *345 lived together until their separation on June 1, 2007. In her answer to the complaint, Cochran denied that she and Chapman were married.
“The trial of the matter on November 14, 2007, focused on whether the parties had entered into a common-law marriage; it was apparently conceded that if they were married, it was solely by virtue of the common law. On November 20, 2007, the trial court issued a judgment determining that the parties had not entered into a common-law marriage.
“On December 5, 2007, Chapman filed a motion to alter, amend, or vacate the trial court’s judgment. He argued that sufficient evidence was offered at the trial to indicate that the parties were married by virtue of the common law and that the trial court’s judgment was contrary to pleadings that Cochran had filed in a previous divorce action between the parties that had been dismissed. On February 11, 2008, the trial court granted Chapman’s motion and vacated its November 20, 2007, judgment. In its order, the trial court found that the parties had, in fact, entered into a common-law marriage. The trial court set the case for a trial on July 23, 2008.
“On February 28, 2008, Cochran filed a motion asking the trial court to certify the February 11, 2008, order as final pursuant to Rule 54(b), Ala. R. Civ. P. The trial court granted Cochran’s motion. Thereafter, Cochran appealed the trial court’s February 11, 2008, order.”
21 So.3d at 1245.
On appeal, this court found that “the trial court’s order setting aside its final judgment and determining that the parties had entered into a common-law marriage [did] not ‘fully adjudicate a whole claim,’ as was necessary to make the order subject to a certification of finality under Rule 54(b).” Id. at 1246. Thus, we concluded that the order from which the appeal was taken was not a final judgment capable of supporting the appeal, and we dismissed the appeal. Id. at 1246-47.
On January 81, 2011, the trial court held a second ore tenus proceeding, after which, on February 3, 2011, it entered a judgment divorcing the parties and dividing their property. Cochran appeals. She contends that the trial court erred in finding that Chapman and she had entered into a common-law marriage and, as a result, that its judgment divorcing them and dividing their property is due to be vacated.
In Lofton v. Estate of Weaver, 611 So.2d 335 (Ala.1992), our supreme court set forth the standard of review appropriate to this case:
“ ‘Courts of this state closely scrutinize claims of common law marriage and require clear and convincing proof thereof.’ Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986), citing Walton v. Walton, 409 So.2d 858 (Ala.Civ.App.1982). A trial judge’s findings of facts based on ore tenus evidence are presumed correct, and a judgment based on those findings will not be reversed unless they are found to be plainly and palpably wrong. Copeland v. Richardson, 551 So.2d 353, 354 (Ala.1989). The trial court’s judgment must be viewed in light of all the evidence and all logical inferences therefrom, and it “will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ Adams v. Boan, 559 So.2d 1084, 1086 (Ala.1990) (citation omitted).”
611 So.2d at 336. “Clear and convincing evidence” is defined as
“[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm *346 conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.”
§ 6 — 11—20(b)(4), Ala.Code 1975. Discussing the elements of a common-law marriage, this court has written:
“In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. Stringer [v. Stringer], 689 So.2d [194,] 195 [ (Ala.Civ.App.1997) ], quoting Crosson v. Crosson, 668 So.2d 868, 870 (Ala.Civ.App.1995), citing Boswell v. Boswell, 497 So.2d 479, 480 (Ala.1986). Whether the essential elements of a common-law marriage exist is a question of fact. Stringer, supra, citing Johnson v. Johnson, 270 Ala. 587, 120 So.2d 739 (1960), and Arrow Trucking Lines v. Robinson, 507 So.2d 1332 (Ala.Civ.App.1987). Whether the parties had the intent, or the mutual assent, to enter the marriage relationship is also a question of fact. See Mickle v. State, 21 So. 66 (1896).”
Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App.2001).
The November 14, 2007, hearing focused on whether the parties had entered into a common-law marriage. Testimony at that hearing indicated that the parties had begun living together in 1989. At the outset of their relationship, the parties lived in a mobile home that Chapman owned. Subsequently, they moved that mobile home onto a parcel of land that, according to Chapman, the parties had purchased together; however, according to Cochran, she had purchased the property. It is undisputed that Cochran held the title to the property.
Chapman testified that the parties purchased a double-wide mobile home in 1997 or 1998 and that he spent two years remodeling it before they moved into it. He stated that the double-wide mobile home had been purchased using a $10,000 cash advance on one of Cochran’s credit cards and that it was titled in Cochran’s name. Testimony indicated that the parties shared the expenses involved in improving the mobile home, and Chapman testified that he made payments on Cochran’s credit cards.
Chapman testified that Cochran and he had opened a bank account together, and a bank statement for that account that listed both of their names was entered into evidence. Cochran testified that she had owned that account and that she had made Chapman an authorized user of the account because he did not have his own bank account and had been having difficulty cashing checks that he received from his customers. Cochran stated that the account was not open for long and that she had closed it.
Testimony indicated that, at some point, Chapman had a credit card related to a credit-card account that was in Cochran’s name. Cochran testified that she had owned that credit-card account and that Chapman was just an authorized user of the account. Testimony at the hearing indicated that, at some point, the parties had jointly owned an automobile-insurance policy. At the time of the 2007 hearing, they had separate automobile-insurance policies.
It is undisputed that the parties did not file joint tax returns but, instead, that they *347 each listed their status as “single” on their respective tax returns. It is likewise undisputed that when Chapman applied to a bank for a loan in 2006, he indicated in the loan application that he was single.
Cochran testified that when she started working for a new employer in 2004, she listed herself as “single” on her application for health insurance. She stated that, on her enrollment form for her new employer’s retirement plan, she listed her mother as her primary beneficiary and Chapman as her contingent beneficiary, indicating on the form that her relationship to Chapman was “friend.”
Although Chapman testified that he considered himself to be married to Cochran, Cochran testified that she had never held herself out as being married to Chapman and that she had never introduced Chapman to anyone as her husband. She stated that she had not used the title “Mrs.” in conjunction with her name or taken Chapman’s surname.
At the November 14, 2007, hearing, the parties called several of their friends and a family member as witnesses. One friend of Chapman’s, who had known the parties for many years, testified that he knew that the parties had lived together and had acquired property together. He stated that he “felt like” the parties were married, but he admitted that whether the parties were married had never been a subject of conversation between the parties and him. He also admitted that there were many years when he did not have contact with the parties. Another friend of Chapman’s, who had also known the parties for many years, responded negatively when asked by the trial judge whether he had ever seen or heard the parties indicate that they were married.
Cochran’s mother testified that the parties had never been married and that, in their conversations with her, they had indicated that they were each single. She also stated that the parties had never, in her presence, introduced one another as husband and wife to others. A friend of Cochran’s testified that her husband and she had spent time with the parties socially and that she had never heard the parties introduce each other as husband and wife.
As previously noted, the trial court initially determined, following the November 14, 2007, hearing, that the parties had not entered into a common-law marriage. In its order setting aside that judgment and determining that the parties had entered into a common-law marriage, the trial court indicated that it was taking judicial notice of an action for divorce that Chapman had filed against Cochran in 2005, which subsequently had been dismissed (“the 2005 divorce action”). In that case, Cochran had maintained the position, in moving to dismiss Chapman’s action, that the parties were not married. After the trial court dismissed the 2005 divorce action on the basis that the parties had reconciled, Cochran filed a motion to reinstate the case in which she asserted:
“That since the time of Order of Dismissal dated March 22, 2006, [Chapman] has destroyed [Cochran’s] real and personal property and caused significant damage to the rental property on [Cochran’s] land by removing appliances and disconnecting utility lines. That [Cochran has been] told by the authorities that [the parties] are common law married and [that Chapman] cannot be removed. That this Honorable Court needs to rule as to the division of property and bills from this common law marriage.”
Chapman, in moving to set aside the November 20, 2007, judgment in the present case finding that the parties were not married by virtue of the common law, argued that the above statement in Cochran’s mo *348 tion from the 2005 divorce action was an admission by Cochran of the existence of a common-law marriage between the parties.
As previously stated, the trial court held a hearing after this court dismissed the appeal from the February 11, 2008, order finding that the parties had entered into a common-law marriage. That hearing was focused on the division of the parties’ assets because the trial court had already resolved the issue whether the parties were married. However, some of the evidence presented at that hearing bears on the issue of whether the parties were, in fact, married. Particularly, Chapman submitted into evidence a receipt, dated March 17, 2006, for his purchase of a diamond ring and a wedding band that he said were in Cochran’s possession. Cochran acknowledged that she had received a diamond ring from Chapman as a gift, but she stated that he had not given her a wedding ring. Also submitted as evidence at the hearing was Chapman’s application for water service in which he had listed Cochran as his spouse. We note, however, that that application is dated November 19, 2007, which was well after the present action had been filed and five days after the first ore tenus proceeding. There was some evidence presented indicating that the parties had a second credit-card account together, although Cochran testified that that account belonged to her and that Chapman was merely an authorized user of the account.
To demonstrate that the parties had entered into a common-law marriage, Chapman was required to present clear and convincing evidence of “(1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation.” Gray, 835 So.2d at 194. Among other things, Cochran argues that Chapman failed to prove public recognition of the parties’ relationship as a marriage. We agree.
In Bishop v. Bishop, 57 Ala.App. 619, 622, 330 So.2d 443, 445 (Civ.1976), this court wrote:
“We cannot dispute that public knowledge of the common-law marriage is the most effective means of insuring that the more casual relations between men and women are not elevated to the status of marriage. The marriage relationship may be shown in any way that can be known by others, such as living together as man and wife, referring to each other in the presence of others as being in that relation, declaring the relation in various types of documents and transactions, sharing household duties and expenses, and generally engaging in ‘... all of the numerous aspects of day-today mutual existence of married persons.’ Beck v. Beck, 286 Ala. 692, 246 So.2d 420 [ (1971) ]; Vinson v. Vinson, [260 Ala. 254, 69 So.2d 431 (1953)].”
The record in this case does not support a finding, by clear and convincing evidence, that the parties’ relationship was publicly recognized as a marriage. There is no evidence indicating that the parties held themselves out generally to the public as married, there is no evidence indicating that they introduced themselves to anyone as being married, and there is no evidence indicating that they referred to themselves as being married in the presence of others. To the contrary, the evidence indicates that both parties regularly referred to themselves as being single in the many documents they prepared, including in Chapman’s application for a loan, in Cochran’s employment documents, and in the parties’ tax returns. The only document submitted into evidence in which Chapman referred to Cochran as his spouse was *349 prepared after the parties already had begun litigating the question whether they were married.
Although it is true that the parties lived together for many years, this court has stated that “[t]he fact that the parties may have lived together or cohabited, standing alone, is insufficient to show that the parties had entered into a common-law marriage.” Reese v. Holston, 67 So.3d 109, 113 (Ala.Civ.App.2011). Although there was some evidence, which was controverted in part, indicating that the parties had a joint checking account for a short time, a joint credit-card account, and a joint automobile-insurance policy, there is no indication that they intended, in holding those accounts and that policy jointly, to hold themselves out to the public as husband and wife. Nor is there any indication that, by holding those accounts and that policy jointly, their relationship had gained public acknowledgment as a marriage. As noted, Cochran never assumed Chapman’s surname, and the bulk of the evidence presented plainly contradicts any view that the parties had held themselves out to the public as being married. See Reese, 67 So.3d at 113 (reversing the trial court’s judgment finding that a common-law marriage existed and holding that the parties’ relationship had not achieved public recognition as a marriage despite evidence indicating that the purported wife had told members of her church that the parties were married, that the purported wife’s family had believed that the parties were married, and that two funeral programs had indicated that the parties were married); Bishop, 57 Ala.App. at 622, 330 So.2d at 445-46 (reversing the trial court’s judgment finding that a common-law marriage existed and holding that the facts showing public recognition of marriage were too meager to show that the parties considered themselves married, despite evidence indicating that the purported husband signed a medical-consent form as the purported wife’s spouse, that he twice introduced the purported wife as his wife, and that he allowed the purported wife and her two children to use his surname).
It appears that the trial court, in reversing its prior decision and determining that the parties had entered into a common-law marriage, may have relied on the previously quoted statements contained in Cochran’s motion to reinstate the 2005 divorce action to the effect that she was seeking to have the parties’ property divided because she had been told by authorities that Chapman and she were married by virtue of the common law and, as a result, that she could not have Chapman removed from her property. Those statements contained in Cochran’s motion do not persuade us that the evidence supports the trial court’s finding of a common-law marriage. It appears that Cochran took the position in the 2005 divorce action that the parties had not entered into a common-law marriage, and she altered that position only because, she alleged, she had been told that she could not have Chapman removed from her property. When read in context, we simply do not view the allegations in Cochran’s motion to reinstate the 2005 divorce action as rising to the level of an admission that the parties were married by virtue of the common law.
Considering the totality of the evidence, we cannot conclude that the trial court had before it clear and convincing evidence that the parties’ relationship had gained public recognition as a marriage. Thus, the trial court erred to reversal in finding that the parties had entered into a common-law marriage. Because clear and convincing evidence does not support the trial court’s finding that the parties were married, the judgment is reversed and the cause is remanded to the trial court for the entry of a judgment dismissing the action.
*350 REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.