PITTMAN, Judge.
Ronnie Burnette (“the mother”) appeals from a judgment of the Chilton Circuit Court (“the trial court”) purporting to divorce her from Jacob Tighe (“the father”) and making an award of custody of the parties’ child (“the child”) to the father and ordering her to pay child support. We affirm in part; reverse in part; and remand the case with instructions to the trial court.
On September 17, 2010, the mother filed in the trial court a complaint against the father seeking, among other things, custody of the child and child support; that action was assigned case no. DR-10-266 (“the custody action”). In her complaint, the mother asserted, among other things, that Tighe is “admitted to be the father of the child,” that the original birth certificate lists Tighe as the father of the child, and that Tighe had signed an affidavit of paternity at the hospital after the birth of the child. She also filed a motion for pendente lite relief, seeking custody of the child and child support. On October 14, 2010, the parties entered into a pendente lite visitation agreement, in which they agreed that they would have joint legal custody of the child, with the mother having primary physical custody subject to the father’s visitation with the child every other weekend.
On October 24, 2010, the father filed in the trial court a complaint for a divorce asserting that he and the mother were common-law married and seeking a divorce, joint custody of the child, and an equitable division of marital property and debts; that action was assigned case no. DR-10-304 (“the divorce action”). The father submitted his sworn and notarized custody affidavit, requesting that the cus *913 tody action be consolidated with the divorce action. He filed another sworn and notarized affidavit in which he stated, among other things, that he and the mother had entered into a common-law marriage on or about April 1, 2007, that they had commenced holding themselves out as husband and wife, and that the child had been born of the parties’ marriage. The mother filed an answer to the father’s complaint, denying that the parties were common-law married. The mother also filed a motion to dismiss the father’s complaint or, in the alternative, to consolidate the divorce action with the custody action. The trial court denied the mother’s motion to dismiss and consolidated the two actions.[1]
The father subsequently filed in the custody action an amended answer and counterclaim, seeking custody of the child, subject to the mother’s visitation.[2] Following a trial, the trial court entered a final judgment dissolving the bonds of matrimony previously existing between the parties based on their incompatibility of temperament and ordering neither party to contract marriage, except to each other, until 60 days after the date of the judgment. The judgment further awarded the parties joint legal custody of the child, awarded the father primary physical custody of the child subject to the mother’s right of visitation, and ordered the mother to pay $53 monthly in child support to the father. The mother filed a postjudgment motion, asserting that there was new evidence that she could not submit earlier due to her lack of means to pay for expert-witness expenses and subpoena fees. She further asserted that it would be to the child’s detriment to remain in the primary physical custody of the father. Finally, the mother argued that the divorce language included in the judgment was in error because, she argued, no marriage between the parties had existed. The mother filed an amended postjudgment motion, attaching thereto a number of exhibits that had not been submitted at the trial. The trial court denied the mother’s postjudgment motion, and the mother timely filed her notice of appeal to this court.
The mother first argues on appeal that the trial court erred by entering a judgment divorcing the parties. The mother cites Stringer v. Stringer, 689 So.2d 194, 197 (Ala.Civ.App.1997), for the proposition that a trial court has “subject matter jurisdiction to grant the parties a divorce only if the parties were, in fact, married.” See also Ala.Code 1975, § 30-2-1. The mother argues that, because there was no evidence of a marriage, the trial court lacked subject-matter jurisdiction to divorce the parties.
In Cochran v. Chapman, 81 So.3d 344 (Ala.Civ.App.2011), this court discussed the standard of review of a challenge to a trial court’s finding that a common-law marriage exists:
“ ‘ “Courts of this state closely scrutinize claims of common law marriage and require clear and convincing proof thereof.” Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986), citing Walton v. Walton, 409 So.2d 858 (Ala.Civ.App.1982). A trial judge’s findings of facts based on ore tenus evidence are presumed correct, and a *914 judgment based on those findings will not be reversed unless they are found to be plainly and palpably wrong. Copeland v. Richardson, 551 So.2d 353, 354 (Ala.1989). The trial court’s judgment must be viewed in light of all the evidence and all logical inferences therefrom, and it “will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” Adams v. Boan, 559 So.2d 1084, 1086 (Ala.1990) (citation omitted).’
“[Lofton v. Estate of Weaver,] 611 So.2d [335] at 336 [(Ala.1992)]. ‘Clear and convincing evidence’ is defined as
“ ‘[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.’
“ § 6-11-20(b)(4), Ala.Code 1975.”
81 So.3d at 345-46. In the present case, the trial court failed to make any findings of fact in its judgment. Because it proceeded to divorce the parties, however, it made an implicit finding that the parties had entered into a common-law marriage.
“ ‘In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation.’ Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App.2001). ‘Courts of this state closely scrutinize claims of common-law marriage and require clear and convincing proof thereof.’ Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986). ‘Whether the essential elements of a common-law marriage exist is a question of fact.’ Gray, 835 So.2d at 194.”
Watson v. Bowden, 38 So.3d 93, 97 (Ala.Civ.App.2009).
In response to the mother’s argument, the father asserts that evidence was presented indicating that the parties had lived together, had had a child together, and had vacationed together with other family members; that he had tried to be a “father type figure” to the mother’s other children; and that he had paid expenses for the mother’s other children. The father testified at trial that he had been living in Texas and working around the country as a millwright, installing conveyors in distribution warehouses, when he met the mother, who, at the time, was working in a distribution warehouse in Pelham. He stated that he and the mother had begun a relationship and that, when he had learned that she had become pregnant, he had relocated from Texas to Alabama and had moved in with the mother and her children from other relationships. The child was born on June 18, 2007. The father testified that he had lived with the mother and had participated in raising the child until he and the mother had separated in 2010. However, when asked whether he acknowledged that he had never been married to the mother, the father responded: “That’s correct.”
After reviewing the record, we conclude that the trial court did not have before it clear and convincing evidence demonstrating that the parties had a mutual agreement to enter into the marriage relationship or that there had been public recognition of their relationship as a marriage. Because the evidence presented *915 does not rise to the level required for finding that a common-law marriage existed, see, e.g., Cochran, 81 So.3d at 349, we reverse the trial court’s judgment insofar as it determined implicitly that the parties had been married at common law and purported to divorce the parties.[3]
The mother next argues that, if the trial court did not have jurisdiction to enter the divorce judgment, it likewise did not have jurisdiction to enter a custody order. The father, on the other hand, argues that, notwithstanding whether the parties had been married, the trial court still had the authority to make a determination on the issue of the child’s custody.
We first note that this court has not determined that the trial court did not have jurisdiction to enter a judgment divorcing the parties. Instead, we have determined, based on established caselaw and the facts of this case, that the trial court erred in finding that the parties had entered into a common-law marriage. In support of his argument that the trial court had jurisdiction to award custody of the child to him, the father asserts that there was no paternity action filed in this matter, that he is named on the child’s birth certificate, that he signed an affidavit of paternity acknowledging the child at his birth, and that “the child bears the name of [the father] who [had] lived with the child and held him out as his own child.” Although we are reversing the trial court’s judgment insofar as it divorced the parties, the issue of the child’s custody was also before the trial court in the custody action pursuant to the complaint filed by the mother and the counterclaim for custody filed by the father. The mother asserts that, because the trial court did not adjudicate the father’s paternity, it did not have jurisdiction to enter a judgment awarding custody of the child to the father. The mother admitted the father’s paternity of the child in her pleadings in the custody action, and, contrary to the mother’s assertions on appeal that she sought a determination of paternity in the custody, action, there was no request for an adjudication of paternity before the court at any time in either action by either party.
Section 12-15-114(a), Ala.Code 1975, which addresses the actions, including dependency actions, over which a juvenile court exercises exclusive original jurisdiction, provides, in pertinent part, that “[a] dependency action shall not include a custody dispute between parents.” Section 12 — 15—115(a)(7), Ala.Code 1975, provides that juvenile courts also have original exclusive jurisdiction in “[proceedings to establish, modify, or enforce support, visitation, or custody when a juvenile court previously has established parentage.” (Emphasis added.) Reading those two Code sections together, as we must, it is clear that, in cases in which a juvenile court has not previously established parentage, a circuit court has jurisdiction to determine custody. Because we have determined that there was no paternity action filed by either party, the custody action was, in fact, a custody dispute between the parents. Accordingly, the circuit court had jurisdiction to determine the matters presented in the custody action.
Moreover, in Ex parte Lipscomb, 660 So.2d 986, 989 (Ala.1994), the Alabama Supreme Court stated:
“Ordinarily, the circuit court in a divorce action may award custody ‘of the children of the marriage to either father or mother, as may seem right and proper,’ [Ala.Code 1975,] § 30-3-1; however, *916 because the well-being of minor children is of paramount interest to the state, the circuit court also has jurisdiction to decide custody matters where nonparents are involved. Ex parte Handley, 460 So.2d 167 (Ala.1984). The circuit court’s jurisdiction to do so is derived from the principles of equity; where a child is physically present within the jurisdiction of a circuit court in this state, the court has inherent authority to act to protect the welfare and best interests of the child. Handley. A party need not specifically invoke the circuit court’s inherent jurisdiction; rather, any pleading showing on its face that the welfare of a child requires an order with respect to its custody and support is sufficient to invoke the jurisdiction of the circuit court to settle the matter. Handley. Once the circuit court’s jurisdiction is thus invoked, any matter affecting a child .may become the subject of its adjudication. Handley.”
The language in Ex parte Lipscomb makes it clear that, in the present case, by virtue of both the custody action and the divorce action, principles of equity invoked the trial court’s jurisdiction to make a determination of the child’s custody.
With regard to the mother’s assertion that, because the trial court failed to adjudicate the child’s paternity, it did not have jurisdiction to award custody to the father, we note that the mother has failed to cite any authority requiring the trial court to adjudicate paternity when the same has been admitted by both parties and is not in dispute.
“It is the appellant’s burden to refer this Court to legal authority that supports its argument. Rule 28(a)(10), Ala. RApp. P., requires that the argument in an appellant’s brief include ‘citations to the cases, statutes, [and] other authorities ... relied on.’ Consistent with Rule 28, ‘[w]e have stated that it is not the function of this court to do a party’s legal research.’ Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992) (citing Henderson v. Alabama A & M University, 483 So.2d 392, 392 (Ala.1986) (‘ “Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.” Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984).’)). Because the Board has cited no legal authority that addresses whether a party’s failure to perform its contractual obligations defeats its fraud claims relating to those contracts, we will not consider whether the trial court’s judgment should be reversed as to this issue.”
Board of Water & Sewer Comm’rs of City of Mobile v. Bill Harbert Constr. Co., 27 So.3d 1223, 1254 (Ala.2009). Accordingly, because the mother has cited no legal authority indicating that the trial court erred in adjudicating the child’s custody pursuant to the custody action, we will not consider that argument.
The mother last argues on appeal that the trial court erred in awarding child support to the father. She first asserts that, because the trial court had not adjudicated paternity, it did not have jurisdiction to enter an award of child support. As discussed above, because there was no dispute regarding the paternity of the child, the custody action was properly before the trial court because it presented a custody dispute between the parents. Therefore, the trial court likewise had jurisdiction to address matters incidental to that award, including child support. See Peeks v. Peeks, 602 So.2d 906, 907 (Ala.Civ.App.1992).
The mother argues, in the alternative, that that part of the trial court’s judgment ordering her to pay $59 per *917 month in child support was not in compliance with the child-support guidelines set out in Rule 32, Ala. R. Jud. Admin.
In Hayes v. Hayes, 949 So.2d 150 (Ala.Civ.App.2006), this court stated:
“This court has held that if the record does not reflect compliance with Rule 82(E), Ala. R. Jud. Admin, (which requires the filing of ‘Child Support Obligation Income Statement/Affidavit’ forms (Forms CS-41) and a ‘Child Support Guidelines’ form (Form CS-42)), and if child support is made an issue on appeal, this court will remand (or reverse and remand) for compliance with the rule. See Martin v. Martin, 637 So.2d 901, 903 (Ala.Civ.App.1994). On the other hand, this court has affirmed child-support awards when, despite the absence of the required forms, we could discern from the appellate record what figures the trial court used in computing the child-support obligation. See, e.g., Dunn v. Dunn, 891 So.2d 891, 896 (Ala.Civ.App.2004); Rimpf v. Campbell, 853 So.2d 957, 959 (Ala.Civ.App.2002); and Dismukes v. Dorsey, 686 So.2d 298, 301 (Ala.Civ.App.1996). Nevertheless, without the child-support-guidelines forms, it is sometimes impossible for an appellate court to determine from the record whether the trial court correctly applied the guidelines in establishing or modifying a child-support obligation. See Horwitz v. Horwitz, 739 So.2d 1118, 1120 (Ala.Civ.App.1999).”
949 So.2d at 154.
The record reveals the following. In September 2010, the mother filed an “affidavit of substantial hardship” indicating that her “monthly gross income” was “$1440.00 LTD.” In March 2011, the father filed a form CS-41 “Child Support Obligation Income Statement/Affidavit” indicating that his gross monthly income was $2,600. In April 2011, the mother filed a CS-41 form indicating that she was not employed but that her monthly gross income included employment income of “$1,440.00 month (LTD).” At the trial on March 20, 2013, the mother testified on direct examination as follows:
“Q. [Counsel for the father:] And are you employed?
“A. No, ma’am.
“Q. How long have you not been employed?
“A. About three years.
“Q. And what do you do to support yourself?
[[Image here]]
“A. Child support. I am currently waiting on SSI [Supplemental Security Income]. I did get a settlement from a workman’s comp case.
“Q. You have an SSI case pending now?
“A. Uh-huh (positive response).”
The father did not testify at all regarding his income.
The trial court ordered the mother to pay $59 a month in child support to the father and stated that that amount was in compliance with Rule 32. On appeal, the mother argues, specifically, that there was no evidence presented indicating that she was voluntarily unemployed or that she was capable of being employed and that food stamps and child support are not income for purposes of Rule 32.
In determining a parent’s child-support obligation, Rule 32(B)(2)(b), Ala. R. Jud. Admin., excludes from the definition of “gross income” both child support received for other children and food stamps. Thus, neither the child support the mother receives for her other children nor the food stamps she receives could be considered income for purposes of calculating her child-support obligation. As noted previ *918 ously, the only evidence in the record regarding the parties’ incomes were an “affidavit of substantial hardship” filed by the mother in September 2010 indicating that her “monthly gross income” was “$1440.00 LTD”; the March 2011 CS^l form submitted by the father indicating that his gross income was $2,600 monthly; the April 2011 CS-41 form submitted by the mother indicating that she was not employed but that her monthly gross income included employment income of “$1,440.00 month (LTD)”; and the mother’s testimony that she was not working at the time of the trial and that her only sources of income were the child support she receives for her other children and food stamps, which, as indicated above, are not considered income for purposes of Rule 32.[4]
The record does not contain a CS-42 form prepared by the trial court setting forth the figures the trial court used in allocating child support between the parties, as is required by Rule 82(E). Utilizing the figures contained in the parties’ 2011 CS-41 forms does not result in a child-support award of $59 as ordered by the trial court. Although a trial court can deviate from the child-support guidelines contained in Rule 82, see Rule 32(A)(1), Ala. R. Jud. Admin., it is required to make a “written finding on the record indicating that the application of the guidelines would be unjust or inappropriate.” Rule 32(A). There is no such written finding in the present case. Additionally, we recognize that Rule 32(B)(5), Ala. R. Jud. Admin., allows a trial court to impute income to a parent who is voluntarily unemployed or underemployed. There is nothing in the record to indicate that the trial court imputed income to either party.
. Because the child-support award in this case did not comply with Rule 32, and because we cannot discern from the record the basis for the amount of child support the trial court ordered the mother to pay, we must reverse that portion of the judgment setting the mother’s child-support obligation and remand the cause to the trial court for the entry of a judgment that complies with Rule 32.
Based on the foregoing, we reverse the trial court’s judgment insofar as it determined that the parties were married at common law and purported to divorce the parties, and we remand the cause for the trial court to enter a judgment consistent with this opinion. We also reverse the trial court’s judgment insofar as it ordered the mother to pay child support in the amount of $59 per month, and we remand the cause for the trial court to enter a judgment in compliance with Rule 32. We affirm the judgment in all other respects.
The father’s request for the award of attorney fees on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMAS and DONALDSON, JJ„ concur.
THOMPSON, P.J., concurs in part and concurs in the result in part, with writing.
MOORE, J., concurs in the result, without writing.

. On November 20, 2011, the trial court entered an order dismissing the custody action. On that same date, the trial court entered an order reinstating the custody action and ordering that it be consolidated with the divorce action.

. Although the amended answer and counterclaim was filed under case no. DR-10-304, the divorce action, it is clear that it is, in fact, a response to the mother’s complaint in the custody action.

. Based on the applicable standard of review, we decline to dismiss the trial court's judgment divorcing the parties for lack of jurisdiction, as requested by the mother.

. The record also contains a CS-42 "Child-Support Guidelines” form dated'May 13, 2011, and prepared by counsel for the father, which computes child support using the $1,440 and $2,600 figures.